IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALLAN D. PAUL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:06-cv-00225-KAJ |
| v. | ) | |
| | ) | |
| DELOITTE & TOUCHE, LLP, | ) | |
| and DELOITTE & TOUCHE, USA, LLP, | ) | Trial By Jury Demanded |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Sheldon N. Sandler (No. 245)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
ssandler@ycst.com
Attorneys for Defendants

DATED:  June 20, 2006

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

SUMMARY OF ARGUMENT ..........................................................................................2

STATEMENT OF FACTS ................................................................................................3

ARGUMENT......................................................................................................................4

COUNT V OF THE AMENDED COMPLAINT MUST BE DISMISSED. .....................4

CONCLUSION...................................................................................................................7

## TABLE OF AUTHORITIES

**Page**

Cases

*Organ v. Byron*,
   C.A. No. 05-867-JJF (D. Del. June 5, 2006) ......................................................................... 5

Other Authorities

*6 Del. C.* § 2708 ...................................................................................................................... 4, 6

Massachusetts Fair Employment Practices Act,
   M.G.L. c 151B, Section 4(1) ................................................................................................. 1

ii

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, a citizen of Massachusetts and a former partner in Defendants' accounting firms, filed suit in this Court alleging that his termination violated the Federal Age Discrimination in Employment Act and the Delaware Discrimination in Employment Act, and constituted a breach of the Delaware common law implied covenant of good faith and fair dealing and a breach of his partnership agreements with Defendants. A Motion to Dismiss the state law claims was filed by Defendants and that motion has been briefed.

On May 25, 2006, before he filed his Answering Brief, Plaintiff filed an Amended Complaint adding a Count V based on the Massachusetts Fair Employment Practices Act, M.G.L. c 151B, Section 4(1). Subsequently, in his Answering Brief filed on June 2, 2006, Plaintiff voluntarily dismissed his claim under the Delaware Discrimination statute because his separation from Defendants had occurred before the Delaware Discrimination in Employment Act was amended to allow a cause of action to be pursued in court. (D.I. 9, at p. 5).

Currently, Plaintiff's claims include the federal ADEA claim (Count I), the Delaware state common law claim for breach of the implied covenant (Count III), the contract claim for breach of the partnership agreements (Count IV), and, since the filing of the Amended Complaint, the Massachusetts state statutory age discrimination claim (Count V).

Defendants have now moved to dismiss Count V of the Amended Complaint, in reliance on the forum selection provisions of the parties' partnership agreements, the relevant portions of which are attached as Exhibits A and B. This is Defendants' Opening Brief in Support of Their Motion.

## SUMMARY OF ARGUMENT

In Plaintiff's partnership agreements with Defendants, Plaintiff agreed that the laws of the State of Delaware would govern his relationship with Defendants. Having voluntarily dismissed his claim based on the analogous Delaware statute because it was not yet in effect at the time he left Defendants, Plaintiff can not substitute a Massachusetts discrimination statute, and Count V of the Amended Complaint must be dismissed.

2

## STATEMENT OF FACTS

Plaintiff, Alan D. Paul (whose first name is misspelled in the Complaint as "Allan") was one of several hundred former partners of the Arthur Andersen accounting firm, Amended Complaint, (D.I. 7, at ¶9), who were offered partnerships by Defendants in 2002. Amended Complaint, (D.I. 7, at ¶¶9-12). Plaintiff accepted the partnership offers on May 8, 2002, (Exs. A and B), and became a member of Defendants' partnerships, working as a partner in the Boston, Massachusetts office. Amended Complaint, (D.I. 7, at ¶¶14-15).

Plaintiff was terminated from the partnerships by letter dated April 22, 2004 due to his failure to meet performance expectations. Amended Complaint, (D.I. 7, at ¶¶20, 28, 33-34). Plaintiff's birth date is June 2, 1949. At the time of his termination he was 54 years old. Amended Complaint, (D.I. 7, at ¶8). He alleges that he filed charges of age discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission on December 13, 2004. Amended Complaint, (D.I. 7, at ¶7). He does not allege that he filed a charge with the Delaware Department of Labor.

Plaintiff filed suit in this Court on April 6, 2006, alleging that venue in this Court is proper because his partnership agreements require that all litigation occur in Delaware and because Defendants reside in Delaware. Amended Complaint, (D.I. 7, at ¶6.) In his Amended Complaint, he alleges that this Court has supplemental jurisdiction to hear matters arising under the laws of the Commonwealth of Massachusetts. Amended Complaint, (D.I. 7, at ¶5).

3

**ARGUMENT**

## COUNT V OF THE AMENDED COMPLAINT MUST BE DISMISSED.

The partnership agreements that Plaintiff signed on May 8, 2002 with Deloitte

& Touche LLP and Deloitte & Touche USA LLP are attached hereto as Exhibits A and B.

The Agreements conform to the requirements of, and expressly refer to, Delaware's choice of

law statute, 6 *Del. C.* § 2708.  Plaintiff has acknowledged in the Agreements that he "has

expressly relied upon 6 *Del. C.* § 2708."  And in his Complaint and Amended Complaint,

Plaintiff does not dispute that jurisdiction and venue in Delaware is proper, noting that

Defendants are citizens and residents of Delaware.  Thus, as provided in 6 *Del. C.* § 2708,

Plaintiff has agreed that the laws of Delaware shall govern his "rights, remedies, liabilities,

powers and duties."  *Id.*

The applicable language is the same in both partnership agreements.  It

includes the following provision:

> Governing Law – This Agreement **shall be deemed to be
> executed in the City of Wilmington, State of Delaware,
> regardless of the domiciles of the several parties hereto or
> where it is in fact executed,** and **shall be governed and
> construed in accordance with the laws of the State of
> Delaware without giving effect to its conflicts of law rules** . .
> ..  Each of the Parties agrees (a) that this Agreement involves
> at least $100,000, and (b) that each of the Parties has expressly
> relied 6 *Del. C.* § 2708.

Ex. A, p. 36; Ex. B, p. 65.  Emphasis added.

The Agreements also provide that "[a]ny claims (a) relating to the Partnership

or (b) involving the Partnership . . . (i) arising under or relating to this Agreement, (ii)

relating to the Partnership or its business, or (iii) relating to any other agreement between the

Partnership and any Parties or any other person or persons listed above in this clause (b) . . .

4

shall be brought only in the courts of the State of Delaware or federal courts sitting in the State of Delaware . . .." *Id.*, Ex. A, ¶13.04, Ex. B, ¶14.04.

Finally, the Agreements also have provisions whereby all parties submit themselves to Delaware jurisdiction. Ex. A, at 36-7; Ex. B, at 65-6.

The plain language of the Agreements and the Delaware choice of law statute make it clear that Plaintiff can not sue based on a Massachusetts discrimination statute. He has agreed that all aspects of his partnerships are governed by Delaware law.

This Court has recently addressed the very same issue in *Organ v. Byron*, C.A. No. 05-867-JJF (D. Del. June 5, 2006). There, the plaintiff filed suit initially in the Northern District of Illinois and sought to rely on an Illinois securities law. That court, pursuant to a forum selection clause in the parties' Agreement, ordered the case transferred to the Delaware District Court. Ex. 3, slip op. at 1. Defendants then moved to dismiss, contending that the Delaware choice of law provision in the parties' Agreement precluded the plaintiff from making a claim based on Illinois securities law. This Court agreed, citing Delaware's policy "to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction," and held that the Delaware choice of law provision contained in the agreement barred plaintiff's Illinois state law claim. Ex. 3, slip op. at 8 (citation omitted).

This Court went on to find that since plaintiff had "explicitly disclaimed any intention of seeking leave to amend his complaint to state a claim under Delaware law," slip op. at 12, defendants' motion to dismiss must be granted. Similarly, Plaintiff in the present matter has voluntarily dismissed his Delaware statutory claim and instead seeks to pursue a statutory claim under Massachusetts law by way of his Amended Complaint. That effort to

skirt the fact that the Delaware statute did not authorize a lawsuit at the time Plaintiff left Defendants should be rejected.

The Court in *Organ* rejected plaintiff's claim that the choice of law clause excluded state securities laws. Slip op. at 7. The Court noted that the choice of law language "explicitly states that not only will 'the Merger' be governed by Delaware Law, but so will 'all other aspects of this agreement.'" *Id.*

The Agreements in the instant case are even broader. With the sole exception of the provisions dealing with competitive activities, which are specifically said to be governed by the laws of the jurisdiction where the office with which the party was associated is located, Ex. A, 13.02, Ex. B, 14.02, all other matters are governed by Delaware Law. This Court and Delaware State courts are given exclusive jurisdiction over "[a]ny claims (a) relating to the Partnership or (b) involving the Partnership . . . (i) arising under or relating to this Agreement, (ii) relating to the Partnership or its business, or (iii) relating to any other agreement between the Partnership and any Parties or any other person or persons listed above in this clause." The parties have also specifically accepted the validity of 6 *Del. C.* § 2708. Therefore, Plaintiff's effort to amend the Complaint to substitute a Massachusetts discrimination statute for the Delaware statute that was not applicable to him should be rejected and this motion granted.

**CONCLUSION**

Count V of Plaintiff's Amended Complaint should be dismissed, or

alternatively, partial summary judgment should be granted to Defendants on Count V.


Respectfully submitted,


YOUNG CONAWAY STARGATT & TAYLOR, LLP


Sheldon N. Sandler (No. 245)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
ssandler@ycst.com
Attorneys for Defendants


DATED:  June 20, 2006

## CERTIFICATE OF SERVICE

I, **Sheldon N. Sandler**, **Esquire**, hereby certify that on **Tuesday, June 20, 2006**, I

electronically filed a true and correct copy of the foregoing **Defendants' Opening Brief in**

**Support Of Their Motion to Dismiss Or, Alternatively, For Summary Judgment** which will

send notification that such filing is available for viewing and downloading to the following

counsel of record.  A courtesy copy of such **Defendants' Opening Brief in Support Of Their**

**Motion to Dismiss Or, Alternatively, For Summary Judgment** was also hand delivered to the

following counsel of record on this date.

> Gary W. Aber, Esquire
> Aber, Goldlust, Baker & Over
> 702 King Street, Suite 600
> P.O. Box 1675
> Wilmington, DE 19899-1675


YOUNG CONAWAY STARGATT & TAYLOR, LLP


> Sheldon N. Sandler, Esquire (No. 0245)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, Delaware  19899-0391
> Telephone: (302) 571-6673
> Facsimile: (302) 576-3330
> Email:  ssandler@ycst.com
> Attorneys for Defendant


DATED:    June 20, 2006

Composite Copy Reflecting Amendments
Adopted Through November 17, 2003 and
Effective December 28, 2003

MEMORANDUM OF AGREEMENT

OF

DELOITTE & TOUCHE LLP

## MEMORANDUM OF AGREEMENT

### OF

### DELOITTE & TOUCHE LLP

Memorandum of Agreement, made as of the Effective Date (as such term is defined below), among the Active Parties (as hereinafter defined) who have signed this Memorandum of Agreement and all Persons who subsequently sign a counterpart of this Memorandum of Agreement as initially adopted on the Effective Date or as it may be amended from time to time.

The present parties hereto desire to provide for the governance of Deloitte & Touche LLP under Delaware law as a form of general partnership known as a registered limited liability partnership under the Delaware Revised Uniform Partnership Act, 6 Del. C. § 15-101, et seq. (the "Act") (all references to such Act are intended to include such Act as amended from time to time and all successor statutes to such Act), and this Agreement, subject to the provisions of such Act, and to set forth in detail their respective rights, duties, obligations and liabilities relating to such partnership.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, the parties hereto hereby mutually covenant and agree as follows:

### ARTICLE 1.  DEFINITIONS

1.01.    Active Partner - any Partner whose association with the Partnership shall not have been severed as provided in this Agreement.

1.02.    Active Party - any one of the Active Partners, Active Principals or Deloitte & Touche USA.

1.03.    Active Principal - any Principal whose association with the Partnership shall not have been severed as provided in this Agreement.

1.04.    Board of Directors or Board - the governing body created pursuant to 3.01.

1.05.    Board Member(s) - an Active Party currently serving on the Board of Directors.

1.06.    Capital Loans - as described in 5.01.

1.07.    Chairman of the Board - the Active Partner appointed to and holding the office created under 3.06.

1.08.    Chief Executive Officer - the Active Partner appointed to and holding the office created under 3.04.

1.09.    Connected Entity - as described in 9.061d.

1.10.    Continuing Connected Entity - as described in 9.061d.

1.11.    Deloitte & Touche Firm - an associated group of firms including the Partnership, Deloitte & Touche USA and their respective subsidiaries.

1.12.    Deloitte & Touche USA - Deloitte & Touche USA LLP, a Delaware registered limited liability partnership.

1.13.    Effective Date - the initial date on which this Agreement shall become effective as determined by the Board of Directors of Deloitte & Touche USA pursuant to the Enabling Agreement, dated as of December 1, 1996, among the Consulting Members listed on Schedule A attached thereto, the Persons listed on Schedule B attached thereto, Deloitte & Touche USA, Deloitte & Touche Consulting Group Holding LLC, Deloitte & Touche Consulting Group LLC and the Partnership.

1.14.    Entire Board - as described in 3.02.

1.15.    Estate - the Person or Persons who succeed to the interest of any deceased Party, other than a spouse with survivor's rights, or a beneficiary designated, in either case under Article 6 of the Deloitte & Touche USA Memorandum of Agreement.

1.16.    Executive Committee - as described in 3.04.

1.17.    Global Organization - the international organization of firms using the name "Deloitte & Touche", "Deloitte Touche Tohmatsu" or related names.

1.18.    Management Committee - as described in 3.05.

1.19.    Managing Partner - the Active Partner appointed to and holding the office created under 3.05.

1.20.    Mandatory Retirement Date - as described in 6.024 of the Memorandum of Agreement of Deloitte & Touche USA.

1.21.    National Office - the office or combination of offices from which the management of the Partnership is conducted as designated from time to time by the Board of Directors.

1.22.    Partner - a person who signs this Agreement as a Partner and is a certified public accountant.

1.23.    Partnership - Deloitte & Touche LLP, the partnership formed and continuing pursuant to this Agreement.

2

1.24.    Party - a Partner or Principal who signs this Agreement, pursuant to Article 15 or Article 16 or Deloitte & Touche USA.

1.25.    Person - a corporation, an association, a partnership, a limited liability company, any other entity or an individual.

1.26.    Principal - a person who signs this Agreement as a Principal and is not a certified public accountant.

1.27.    Vice Chair of the Board or Vice Chair - the Board Member elected to and holding the office created under 3.07.

1.28.    Required Capital - as described in 5.01.

1.29.    Supplemental Capital - as described in 5.02.

1.30.    Supplemental Capital Loans - as described in 5.02.

1.31.    US Senior Partner - the Deloitte & Touche USA US Senior Partner.

1.32.    Voluntary Capital Loans - as described in 5.03.

1.33.    Voting Interests - as described in 3.092.

1.34.    Year(s) - the fiscal year ending on the Saturday nearest to May 31 or such other fiscal year as fixed by the Board of Directors.

## ARTICLE 2.  THE PRACTICE

2.01.    <u>Name</u> - The Partnership shall conduct its practice under the name of Deloitte & Touche LLP.

2.02.    <u>Certain Limitations on Actions of Active Principals</u> - An Active Principal is prohibited from:

   2.021.    signing the Partnership name on any report, engagement letter, consent, certification or other document that relates to the expression of an opinion on financial statements or otherwise engaging in activities which may be conducted under applicable law only by certified public accountants;

   2.022.    being held out or holding oneself out to the public as a certified public accountant or as a Partner (an Active Principal shall not be referred to in such things as business cards, directories, press releases and other publications of the Partnership as a Partner or certified public accountant); or

3

## ARTICLE 13.  INTERPRETIVE MATTERS

13.01.    <u>Interpretation by the Board</u> - If any question shall arise in regard to the interpretation of any provision of this Agreement, the decision of the Board as to its interpretation shall be conclusive as to all Parties or other persons claiming by, through or under any of them.

13.02.    <u>Governing Law</u> - This Agreement shall be deemed to be executed in the City of Wilmington, State of Delaware, regardless of the domiciles of the several parties hereto or where it is in fact executed, and shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to its conflict of law rules, except that with respect to 9.06, the laws in accordance with which such provisions shall be governed and construed shall be the laws of the jurisdiction in which was located the office of the Partnership with which the Party was associated at the time of severing association.  Each of the Parties agrees (<u>a</u>) that this Agreement involves at least $100,000, and (<u>b</u>) that each of the Parties has expressly relied upon 6 <u>Del. C.</u> § 2708.

13.03.    <u>Captions and Headings</u> - The captions and headings in this Agreement are for convenience only and shall not be considered in the interpretation of this Agreement.

13.04.    <u>Situs of Litigation</u> - Any claims (<u>a</u>) relating to the Partnership or (<u>b</u>) involving the Partnership or any Parties or their respective executors, administrators, heirs, legatees, devisees, trustees, receivers, other personal representatives and any other person claiming by, through or under such persons: (<u>i</u>) arising under or relating to this Agreement, (<u>ii</u>) relating to the Partnership or its business, or (<u>iii</u>) relating to any other agreement between the Partnership and any Parties or any other person or persons listed above in this clause (b) (including persons claiming by, through or under any Parties or any such person or persons), shall be brought only in the courts of the State of Delaware or federal courts sitting in the State of Delaware and not in any other state or federal court in the United States of America or any court in any other country.

13.05.    <u>Submission to Jurisdiction; Appointment of Agent for Service of Process</u> - Each Party hereby irrevocably and unconditionally agrees (<u>a</u>) to be subject to the jurisdiction of the courts of the State of Delaware and of the federal courts sitting in the State of Delaware, and (<u>b</u>) (<u>i</u>) to the extent such Party is not otherwise subject to service of process in the State of Delaware, to appoint and maintain an agent in the State of Delaware as such Party's agent for acceptance of legal process, and (<u>ii</u>) that service of process may also be made on such Party by prepaid certified mail with a proof of mailing receipt validated by the United States Postal Service constituting evidence of valid service, and that service made pursuant to (b) (i) or (ii) above shall have the same legal force and effect as if served upon such Party personally within the

36

State of Delaware. For purposes of implementing the Parties' agreement to appoint and maintain an agent for service of process in the State of Delaware, each such Party does hereby appoint Corporation Service Company, 1013 Centre Road, Wilmington, New Castle County, Delaware 19805, as such agent.

13.06.    No Third Party Beneficiaries; Enforcement - Anything in this Agreement to the contrary notwithstanding, no term or provision of this Agreement is intended to create, nor shall any such term or provision be construed as creating or evidencing an intent to create, any rights on the part or benefit in favor of any person or group of persons other than the Parties and their successors to the extent (but only to the extent) expressly provided herein.

## ARTICLE 14. ADMISSION OF ADDITIONAL PARTIES; TERMINATION AND DISSOLUTION; COMBINATION

14.01.    Admission with Approval of Parties - The Board shall approve the admission of any person as a Partner or Principal, with the approval of Deloitte & Touche USA and with the approval of two-thirds of the Active Parties and the holders of two-thirds of the Voting Interests, provided, however, that neither the Board, the Active Parties nor the holders of Voting Interests shall be required to approve the admission of any Person as a Partner or Principal in any instance in which the admission of such person is contemplated in conjunction with a multinational or multifunctional merger, in which case the approval of Deloitte & Touche USA shall be dispositive. As a condition to the admission of any person as a Partner or Principal, such person shall sign and return a signature page to the Chairman in accordance with 16.02 and thereby become a Party hereto and bound by all the terms and provisions hereof.

14.02.    Admission by Board - With the approval of Deloitte & Touche USA the Board may, without requesting the approval of the Active Parties, during each year approve the admission of any person as a Partner or a Principal, provided that such Person has also been admitted as a partner or a principal of Deloitte & Touche USA pursuant to section 15.02 of the Deloitte & Touche USA Memorandum of Agreement. With the approval of Deloitte & Touche USA, the Board may also, without requesting the approval of the Active Parties, approve the admission as a Principal of an entity associated with the international organization coordinating the activities of firms using the name "Deloitte & Touche" or related names, provided, however, that, anything in this Agreement to the contrary notwithstanding, such entity shall have no rights or obligations under 7.02 (Withdrawal), 7.03 (Involuntary Termination), Article 9 (Certain Activities, Conduct and Rights of Parties During and After Severing Association with the Partnership) or Article 10 (Indemnification of Parties) of this Agreement.

# SIGNATURE PAGE

The undersigned hereby approves and becomes a party to the Memorandum of Agreement (including all schedules thereto) of Deloitte & Touche LLP as of the effective date set forth below, the receipt of a copy of which is hereby acknowledged, and agrees that this signature page, when signed and filed in the National Office of the Partnership, shall constitute and shall be for all purposes conclusive evidence of, such individual's execution of the Agreement so certified and filed by the Chairman of the Board of Directors as contemplated by 16.03 thereof.

_____5/8/02_____
Effective Date

_____
Name:

ALAN D. PAUL

Composite Copy Reflecting Amendments Adopted
Through November 17, 2003 and Effective
December 28, 2003

---

MEMORANDUM OF AGREEMENT

OF

DELOITTE & TOUCHE USA LLP

---

418272.10-New York Server 3A - MSW

# MEMORANDUM OF AGREEMENT

## OF

## DELOITTE & TOUCHE USA LLP

Memorandum of Agreement dated as of December 3, 1989, as amended, among the Active Partners, Active Principals, and Firms (each as hereinafter defined) who have signed this Memorandum of Agreement in their respective capacities and all persons who subsequently sign a counterpart of this Memorandum of Agreement as initially adopted on the date hereof or as it may be amended from time to time.

The CPA Partners and the Non-CPA Partners of Touche Ross & Co., a partnership (the Touche Firm), and the Touche Firm joined with the Active Partners and Active Directors of Deloitte Haskins & Sells, a partnership (such partnership and any affiliated firms previously a part thereof being hereinafter called the Deloitte Firm), and the Deloitte Firm, to continue the Deloitte Firm under the name Deloitte & Touche LLP pursuant to the terms of this Memorandum of Agreement. The parties who signed the Memorandum of Agreement dated as of December 3, 1989 desired to facilitate the combination of their practices, to assure continued maintenance of the highest professional standards, to arrange for the conduct of the practices of the respective Firms, and to provide for the pooling and distribution of net earnings of the Firms.

The present parties hereto desire to continue the partnership under Delaware law, without dissolution or interruption, as a form of general partnership known as a registered limited liability partnership under the Delaware Revised Uniform Partnership Act, 6 Del. C. § 15-101, et seq. (all references to such Act are intended to include such Act as amended from time to time and all successor statutes to such Act), and this Agreement, under the name Deloitte & Touche USA LLP, such partnership to function as a holding company for operating entities, and to engage in such other activities as shall be determined from time to time by the Board, as hereinafter defined.

The present parties hereto desire to provide for the governance of Deloitte & Touche USA LLP as a general partnership subject to the provisions of such Act, and to set forth in detail their respective rights, duties, obligations and liabilities relating to such partnership.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, the parties hereto hereby mutually covenant and agree as follows:

418272 10-New York Server 3A - MSW

|        | 13.05J | Costs of Existing Partner Level Retirement, Disability and Death Benefits of Each of the Firms. |

## ARTICLE 14.  INTERPRETIVE MATTERS

14.01.  <u>Interpretation by the Board</u> - If any question shall arise in regard to the interpretation of any provision of this Agreement, the decision of the Board as to its interpretation shall be conclusive as to all Parties or other persons claiming by, through or under any of them.

14.02.  <u>Governing Law</u> - This Agreement shall be deemed to be executed in the City of Wilmington, State of Delaware, regardless of the domiciles of the several parties hereto or where it is in fact executed, and shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to its conflict of law rules, except that with respect to 9.06, the laws in accordance with which such provisions shall be governed and construed shall be the laws of the jurisdiction in which was located the office of the Partnership with which the Party was associated at the time of severing association.  Each of the Parties agrees (<u>a</u>) that this Agreement involves at least $100,000, and (<u>b</u>) that each of the Parties has expressly relied upon 6 <u>Del. C.</u> § 2708.

14.03.  <u>Captions and Headings</u> - The captions and headings in this Agreement are for convenience only and shall not be considered in the interpretation of this Agreement.

14.04.  <u>Situs of Litigation</u> - Any claims (<u>a</u>) relating to the Partnership or (<u>b</u>) involving the Partnership or any Parties or their respective executors, administrators, heirs, legatees, devisees, trustees, receivers, other personal representatives and any other person claiming by, through or under such persons:  (<u>i</u>) arising under or relating to this Agreement, (<u>ii</u>) relating to the Partnership or its business, or (<u>iii</u>) relating to any other agreement between the Partnership and any Parties or any other person or persons listed above in this clause (b) (including persons claiming by, through or under any Parties or any such person or persons), shall be brought only in the courts of the State of Delaware or federal courts sitting in the State of Delaware and not in any other state or federal court in the United States of America or any court in any other country.

14.05.  <u>Submission to Jurisdiction; Appointment of Agent for Service of Process</u> - Each Party hereby irrevocably and unconditionally agrees (<u>i</u>) to be subject to the jurisdiction of the courts of the State of Delaware and of the federal courts sitting in the State of Delaware, and (<u>ii</u>) (<u>A</u>) to the extent such Party is not otherwise subject to service of process in the State of Delaware, to appoint and maintain an agent in the State of Delaware as such Party's agent for acceptance of legal process, and (<u>B</u>) that service of process may also be made on such Party by prepaid certified mail with a proof of

mailing receipt validated by the United States Postal Service constituting evidence of valid service, and that service made pursuant to (ii) (A) or (B) above shall have the same legal force and effect as if served upon such Party personally within the State of Delaware. For purposes of implementing the Parties' agreement to appoint and maintain an agent for service of process in the State of Delaware, each such Party does hereby appoint Corporation Service Company, 1013 Centre Road, Wilmington, New Castle County, Delaware 19805, as such agent.

14.06.    <u>No Third Party Beneficiaries; Enforcement</u> - Anything in this Agreement to the contrary notwithstanding, no term or provision of this Agreement is intended to create, nor shall any such term or provision be construed as creating or evidencing an intent to create, any rights on the part or benefit in favor of any person or group of persons other than the Parties and their successors to the extent (but only to the extent) expressly provided herein.

## ARTICLE 15.  ADMISSION OF ADDITIONAL PARTIES; TERMINATION AND DISSOLUTION;  COMBINATION

15.01.    <u>Admission with Approval of Parties</u> - The Board shall approve the admission of any person as a Partner or Principal, with the approval of two-thirds of the Active Parties and the holders of two-thirds of the Voting Interests, except for the situations specified in 15.02. As a condition to the admission of any person as a Partner or Principal, such person shall sign and return a signature page to the Chairman of the Board in accordance with 17.02 and thereby become a Party hereto and bound by all the terms and provisions hereof.

15.02.    <u>Admission by Board</u> - The Board may, without requesting the approval of the Active Parties, during each Year approve the admission of any person as a Partner or Principal, up to the number of persons equal to 3% of the number of Active Parties at the beginning of such Year.

15.03.    <u>Termination and Dissolution</u>

15.031.    Required Vote - The Partnership shall continue until terminated by affirmative written consent or vote of three-fourths of the Active Parties and the holders of three-fourths of the Voting Interests of the Active Parties, except as otherwise specifically required by provisions of the Act that may not be varied by agreement.

15.032.    Effect of an Active Party Severing Association with the Partnership, Bankruptcy of an Active Party or Admission of an Active Party - Neither the severing of association with the Partnership by, or bankruptcy (or insolvency under state laws) of, an Active Party nor the admission of an

66

**SIGNATURE PAGE**

The undersigned hereby approves and becomes a party to the Memorandum of Agreement (including all schedules thereto) of Deloitte & Touche USA LLP as of the effective date set forth below, the receipt of a copy of which is hereby acknowledged, and agrees that this signature page, when signed and filed in the National Office of the Partnership, shall constitute and shall be for all purposes conclusive evidence of, such individual's execution of the Agreement so certified and filed by the Chairman of the Board of Directors as contemplated by 17.03 thereof.

_5/8/02_
Effective Date

_Alan D. Paul_
ALAN D. PAUL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LAWRENCE P. ORGAN,                    :
                                      :
          Plaintiff,                  :
                                      :
    v.                                : Civil Action No. 05-867-JJF
                                      :
MARK BYRON, BEN KAAK and              :
CATHERINE BARBARO,                    :
                                      :
          Defendants.                 :

---

Jeffrey S. Goddess, Esquire, of ROSENTHAL, MONHAIT & GODDESS,
P.A., Wilmington, Delaware.
Of Counsel: Jack L. Haan, Esquire, of SHAHEEN, NOVOSELSKY, STAAT,
FILIPOWSKI & ECCLESTON, P.C., Chicago, Illinois.
Attorneys for Plaintiff.


James L. Holzman, Esquire, and J. Clayton Athey, Esquire, of
PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware.
Of Counsel: Robert B. Lovett, Esquire, and Christopher F.
Robertson, Esquire, of SEYFARTH SHAW, LLP, Boston, Massachusetts.
Attorneys for Defendants.

---

MEMORANDUM OPINION

June 5 , 2006
Wilmington, Delaware

Farnan, District Judge

Presently before the Court is Defendants' Motion to Dismiss (D.I. 30) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court will grant Defendants' Motion.

### BACKGROUND

Plaintiff originally filed this action in the United States District Court for the Northern District of Illinois. He alleged that when he entered into an agreement to sell his 54.1% interest in his company, Custom Offers LLC, to Mosaic Group, Inc., Defendants, directors and officers of Mosaic, failed to disclose "critical, adverse facts relating to Mosaic's business and financial future." (D.I. 22 Att. 1 at 1.) Claiming that Defendants had violated Section 12 of the Illinois Securities Law of 1953, 815 ILCS 5/12 (2005), Plaintiff sought rescission of the merger transaction, $27,100,000 in damages, attorney's fees, interest and costs. (Id. at 2.) Pursuant to a forum selection clause in the Merger Agreement, Defendants moved the Illinois court to dismiss the case for improper venue under Fed. R. Civ. P. 12(b)(3). Judge Zagel agreed with Defendants that the forum selection clause precluded Plaintiff from litigating his claims in Illinois, and ordered the case transferred to this Court pursuant to 28 USC §1406(a). (D.I. 22, Att. 23.)

### DISCUSSION

I. Standard of Law

1

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  To that end, the Court assumes that all factual allegations in Plaintiff's pleading are true, and draws all reasonable factual inferences in the light most favorable to Plaintiff.  Amiot v. Kemper Ins. Co., 122 Fed. Appx. 577, 579 (3d Cir. 2004).  However, the Court should reject "unsupported allegations," "bald assertions," or "legal conclusions."  Id.  The motion to dismiss should be granted only "when it appears beyond doubt that the plaintiff[] can prove no set of facts which would entitle [him] to relief."  In re Great Atl. & Pac. Tea Co. Sec. Litig., 103 Fed. Appx. 465, 468 (3d Cir. 2004).

## II. Analysis

Defendants contend that the Delaware choice of law provision in the Merger Agreement precludes Plaintiff from making a claim based on Illinois Securities Law ("ISL"), and that such a claim would in any event be time-barred under 10 Del.C. §8121.  They further argue that any attempt to amend the complaint to state a claim under Delaware law would be time-barred under the statute of limitations in the Delaware Securities Act, 6 Del.C. §7323(e),

2

under Delaware's general statute of limitations for fraud, and under a contractual limitations period provision in the Merger Agreement.  Finally, Defendants argue that any claims for fraud or misrepresentation are barred under the Merger Agreement's integration clause, which on their reading bars claims based on communications not explicitly included in the agreement.

Plaintiff replies that the Merger Agreement's choice of law provision does not apply to ISL claims, both by its terms and on public policy grounds.  He also contends that Defendants, themselves not signatories to the Merger Agreement, do not have standing to enforce the choice of law provision as they are not third-party beneficiaries.  He disputes that either the agreement's integration clause or its contractual limitations period provision precludes him from pursuing an ISL claim, and that §8121 would bar his ISL claims in Delaware.  Plaintiff's answer does not respond to Defendants' arguments that any claims under Delaware law would be time-barred, explicitly disclaiming any intention of seeking leave to amend his complaint to state a claim under Delaware law.

Because the Court concludes that Defendants have standing to enforce the Delaware choice of law provision, and that the provision applies to Plaintiff's ISL claims, the Court will grant Defendants' Motion to Dismiss.

A.   <u>Contractual Choice of Law Provisions Generally.</u>

Upon a transfer of a suit under §1406(a), the transferee court applies the choice of law rules of the state in which it sits.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 497 (1941); <u>Chadwick v. Arabian American Oil Co.</u>, 656 F.Supp. 857, 860 (D.Del. 1987).  Delaware courts will generally recognize a valid choice of law provision in a contract, as long as "the jurisdiction selected bears some material relationship to the transaction."  <u>Annan v. Wilmington Trust Co. Trustee</u>, 559 A.2d 1289, 1292 (Del. 2000).  Here, the merger transaction itself was to take place in Delaware, a process that included the creation of two Delaware companies.  (D.I. 33 at 16.)  Therefore, the Court will recognize the choice of law provision in the contract as long as it is otherwise valid and applicable to the case at bar.

B.   <u>Defendants' Standing to Enforce the Choice of Law Provision.</u>

In his Memorandum and Opinion Order, Judge Zagel held that Defendants had standing to enforce the Merger Agreement's forum selection clause despite not being signatories or beneficiaries. (D.I. 22 Att. 23.)  He reached this conclusion on an equitable estoppel theory, reasoning that "[p]laintiff bargained for and agreed to [the forum selection clause] as part of his contract with Mosaic," and therefore, Defendants, who were officers of Mosaic, do not lack standing to bind Plaintiff to that promise.

4

(<u>Id</u>. at 5.)  Otherwise, Plaintiff could simply sidestep the forum selection clause by suing officers of the corporation rather than the corporation itself.  (<u>Id</u>. at 4.)

The law of the case doctrine constrains this Court from reconsidering issues already litigated in a coordinate district court.  <u>Hayman Cash Register Co. v. Sarokin</u>, 669 F.2d 162, 165 (3d Cir 1982).  Third Circuit case law does not directly address the proposition that in certain circumstances a non-signatory has standing to bind a signatory to the provisions of a contract.  However, the principle has been recognized by other federal courts.  The Fifth Circuit has held, for example, that a nonsignatory may bind a signatory to an arbitration clause in a contract when warranted by the principle of equitable estoppel.  <u>Grigson v. Creative Artists Agency, L.L.C.</u>, 210 F.3d 524, 527-28 (3d Cir 2000).  In the case principally relied upon by Judge Zagel, Judge Posner held that a plaintiff could not avoid a forum selection clause in a contract simply "by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates."  <u>American Patriot Ins. Agency, Inc. V. Mut. Risk Mgt. Ltd.</u>, 364 F.3d 884, 889 (7th Cir. 2004).

In his answer to Defendants' Motion to Dismiss, Plaintiff repeats the contention that because Defendants are not signatories to the agreement and, according to Plaintiff, cannot

5

be considered third party beneficiaries, they lack standing to enforce any contractual provisions. That argument did not avail Plaintiff in Illinois with respect to the forum selection clause and it will not avail him here with respect to the choice of law provision. There is no relevant semantic difference between the two, nor a policy rationale for distinguishing them. The result of allowing the Plaintiff to avoid a choice of law provision to which he is contractually bound by filing a complaint against an employee of the signatory rather than the signatory itself is no less unfair than allowing him to dodge the forum selection clause in the same manner. Plaintiff bargained for the choice of law provision, and should be bound to it in court. Accordingly, the Court concludes that Defendants have standing to enforce the choice of law clause against Plaintiff.

C.    Application of the Choice of Law Provision to an Illinois Securities Law Claim.

Plaintiff first insists that "[d]efendants cannot justifiably argue that only Delaware law applies, because general choice of law principles do not apply to the broad coverage of the blue sky laws." (D.I. 33 at 6.) Plaintiff is correct only insofar as he argues that choice of law principles do not inextricably bind courts in considering the issue of which jurisdiction's blue sky laws to apply. "The understanding of the parties in a transaction whether it falls within the purview of a particular blue sky law is not determinative of its legal effect

6

. . . and a contractual choice of law provision is not binding on the court." 69A Am. Jur. 2d <u>Securities Regulation - State</u> §18 (2006). However, after examining the relevant case law and evaluating Plaintiff's policy arguments, the Court concludes that the choice of law provision in question here should nonetheless apply.

The purview of a contractual choice of law provision is not limited to contract claims; such a clause can govern "claims in tort . . . on the grounds that false contractual representations were made." <u>Abry Partners V, L.P. v. F&W Acquisition LLC</u>, 891 A.2d 1032 (Del. Ch. 2006). Plaintiff argues that the choice of law clause by its terms excludes state securities laws claims as it does not include language indicating that it would encompass claims "arising out of or relating to" the Agreement. The clause, however, explicitly states that not only will "the Merger" be governed by Delaware Law, but so will "all other aspects of this Agreement." (D.I. 31 Ex. A at 59.) Had the parties wished to limit the choice of law clause to the merger and the resulting corporate entity, they could have done so without inserting the broad provision mandating the application of Delaware Law to "all . . . aspects of [the] agreement." Furthermore, Judge Zagel concluded that "without question, the claims and the relief sought are closely related to the Merger Agreement if not central to the claims and defenses in this

7

case," (D.I. 22, Att. 23 at 7), and the Court in Abry applied an almost identically worded choice of law provision to a misrepresentation claim. Abry, 891 A.2d at 1046. As such, Plaintiff's contention that the choice of law clause does not apply because his claim does not implicate either the "merger transaction itself" nor the "enforcement and interpretation" of the Agreement is not tenable. Giving force to such ambiguous semantic arguments in the application of a choice of law clause would contradict Delaware's policy "to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction." Id.

Plaintiff points to Gloucester Holding Corp. v. U.S. Tape and Sticky Products LLC, 832 A.2d 116 (Del. Ch. 2003), which held that a particular choice of law clause was insufficiently broad to cover a tort claim "arising out of" the agreement. Id. at 124. There, however, the clause expressly limited its reach to the "'rights of the parties' derived from the contract." Id. Such a provision is relevantly different from one extending to "all . . . aspects of the Agreement," indicating a desire by the parties to restrict the clause to specifically contractual claims. In another case, a court refused to apply an Illinois choice of law provision to a tort claim because the parties had expressly limited it to govern the agreement's "validity, construction and enforcement." State Nat'l Bank v. Academia,

<u>Inc.</u>, 802 S.W.2d 282, 289 (Tex. Ct. App. 1990). Plaintiff's arguments would have far more persuasive force had the clause in question here been phrased in a similar way instead of broadly.

Next Plaintiff argues that applying the choice of law clause to ISL claims would contradict Illinois public policy, as the laws were passed to protect Illinois citizens from securities fraud. A choice of law clause can be held "unreasonable" if, <u>inter alia</u>, "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972). Delaware adopts the choice of law principles set out in Restatement 2d, Conflict of Laws, <u>Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.</u>, 564 A.2d 681 (Del. 1978), §288 and §6 of which add that "the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue" must be considered. Restatement (Second) of Conflict of Laws §§ 6, 288 (1971). Thus, in making a choice of law determination, Delaware courts must also consider "the public policy of the jurisdiction in which the actions of the [tortfeasor] cause harm," in this case Illinois. <u>Playtex Family Products, Inc. v. St. Paul Surplus Lines Ins. Co.</u>, 564 A.2d 681, 689 (Del. 1989).

Defendants argue, correctly, that the decisions of Illinois courts preclude Plaintiff's argument that enforcement of the

9

choice of law provision would contravene Illinois public policy. In <u>Ashenden v. Lloyd's of London</u>, the United States District Court for the Northern District of Illinois dismissed the plaintiff's argument that enforcement of the forum selection and choice of law clauses would be unreasonable because it would violate Illinois public policy.  <u>Ashenden v. Lloyd's of London</u>, 1996 U.S. Dist. LEXIS 18336, at *7 (N.D. Ill. Dec. 9, 1996). Relying on the Seventh Circuit's decision in <u>Bonny v. Society of Lloyd's</u>, 3 F.3d 156 (7th Cir 1996), the Court expressly stated that "Illinois policy . . . is not undermined" by forcing the plaintiffs to sue under English securities law pursuant to the contractual forum selection and choice of law provisions. <u>Ashenden</u>, 1996 U.S. Dist. LEXIS 18336 at *11.  Even if <u>Bonny</u> did not govern, the Court stated, requiring the plaintiffs to sue under English law would not contravene Illinois public policy because it would not leave them without any recourse.  <u>Id</u>. at 12. "So long as there are remedies available in England, Illinois policy will not be contravened by enforcing the forum selection clause," which would, in that case, also have mandated the use of English rather than Illinois law.  <u>Id</u>. Other Illinois decisions employ a similar principle. One court held that a Bermuda choice of law clause could not be against Illinois public policy "if Bermuda law and Illinois law do not differ."  <u>Joy v. Hay Group, Inc.</u>, 2003 U.S. Dist. LEXIS 16045, at *21 (N.D. Ill. Sept. 11,

10

2003).

The securities fraud provision in Delaware securities law is virtually identical to Illinois', making it unlawful to (1) "employ any device, scheme or artifice to defraud"; (2) "to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; and (3) "to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller thereof."  6 Del. C. §7303 (2006). Compare 815 ILCS 5/12(G) (2005) (making it a violation (1) "to engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof"; (2) "[t]o obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; and (3) "to employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly").  Read together with 6 Del. C. §7323, §7303 has been held to create a cause of action for misrepresentation.  Singer v. Magnavox Co., 367 A.2d 1349, 1361 (Del. Ch. 1976).  Thus, not only does the

11

Plaintiff have recourse under Delaware law, but the Delaware
Securities Law provisions are essentially identical to the
Illinois provisions Plaintiff is using.  Under <u>Ashenden</u>,
therefore, enforcing the choice of law clause would not
contravene Illinois public policy.  Because no other significant
public policy considerations have been raised, the Court
concludes that Plaintiff's public policy arguments are
insufficient to withstand the Motion to Dismiss.  For the reasons
discussed, the Court concludes that the contractual choice of law
provisions should be enforced in this case because such
enforcement would violate neither the terms of the clause nor
public policy.

III. Conclusion

     Because the Court concludes that Plaintiff's Illinois law
claim is barred by the choice of law clause in the Merger
Agreement, it is unnecessary to discuss Defendants' arguments
that Plaintiff's claim would also be barred under 10 Del.C.
§8121, the contractual limitations period provision and the
Agreement's integration clause.  Because Plaintiff explicitly
disclaimed any intention of seeking leave to amend his complaint
to state a claim under Delaware law, (D.I. 33 at 23), the Court
will grant Defendants' motion to dismiss with prejudice.

     An appropriate order will be entered.

                                                            12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LAWRENCE P. ORGAN,                    :
                                      :
            Plaintiff,                :
                                      :
      v.                              : Civil Action No. 05-867-JJF
                                      :
MARK BYRON, BEN KAAK and              :
CATHERINE BARBARO,                    :
                                      :
            Defendants.               :

<u>ORDER</u>

At Wilmington, this ___ day of June 2006, for the reasons

set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss

(D.I. 30) is <u>GRANTED</u>.

UNITED STATES DISTRICT JUDGE