IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALAN D. PAUL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 06-00225-KAJ |
| v. | ) | |
| | ) | Trial By Jury Demanded |
| DELOITTE & TOUCHE, LLP, | ) | |
| and DELOITTE & TOUCHE, USA, LLP, | ) | |
| | ) | |
| Defendants | ) | |

**NOTICE OF PLAIN TIFF'S SECOND**
**AMENDMED COMPLAINT PURSUANT TO RULE 15(a)**

PLEASE TAKE NOTICE, that the Plaintiff, pursuant to the provisions of Rule 15(a), Federal Rules of Civil Procedure, amends the Complaint in the form attached hereto as a matter of right, the defendants having not filed a responsive pleading to the complaint.

ABER, GOLDLUST, BAKER & OVER


_____/s/ Gary W. Aber_____
GARY W. ABER (DSB #754)
First Federal Plaza, Suite 600
702 King Street, P.O. Box 1675
Wilmington, DE  19899
302-472-4900

DATED:  June 27, 2006                                Attorney for Plaintiff

## AMENDED COMPLAINT

## THE PARTIES

1. The plaintiff, Alan D. Paul (hereinafter referred to as "plaintiff") is a citizen of the Commonwealth of Massachusetts.

2. The defendants, Deloitte & Touche, LLP, is a Delaware Limited Liability Partnership, and Deloitte & Touche, USA, LLP is an umbrella partnership for Deloitte & Touche, LLP, and is also a Delaware Limited Liability Partnership (which are hereinafter referred to as "defendants"), which is the audit and tax related services operating partnership. The defendants' registered agents for service of process is the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware.

## JURISDICTION

3. Jurisdiction is conferred upon this Court pursuant to the provisions of 28 U.S.C. §§1331 and 1343, in that the matter in controversy arises, in part, under the laws of the United States of America.

4. This action is brought pursuant to the provisions of the "Age Discrimination Employment Act of 1967", as amended 29 U.S.C. §621 et.seq., and the provisions of 19 Del.C. §711, and the Common Law of the State of Delaware.

5. This Court has supplemental jurisdiction to hear the matters arising under the laws of the State of Delaware, and the Commonwealth of Massachusetts pursuant to 28 U.S.C. §1367.

6. Jurisdiction is further vested in this Court, pursuant to the provisions of 28 U.S.C. §1332, based upon the diversity of citizenship of the parties, in that the acts which give rise to this matter occurred in the State of Delaware, between a resident of the Commonwealth of

Massachusetts, and a resident of the State of Delaware, and the amount of the controversy exceeds $75,000.

7. Venue in this Court is proper under the provisions of 28 U.S.C. §1391, since the defendants reside within the State of Delaware, and contractual obligations between the parties require all litigation to occur within the State of Delaware.

## EXHAUSTION OF REMEDIES

8. Prior to the filing of this action, the plaintiff timely filed a charge of age discrimination with the Massachusetts Commission Against Discrimination, which constituted a simultaneous filing with the Equal Employment Opportunity Commission, on December 13, 2004, alleging discriminatory conduct.

## FACTS

9. The plaintiff is a male citizen of the United States whose date of birth is June 2, 1949, which, on the date of the violations stated herein, indicates that he was 54 years of age.

10. The plaintiff was formally a partner with Arthur Andersen, LLP.

11. In early 2002 the defendants reached an agreement with Arthur Andersen, LLP to acquire some of its partners.

12. On April 2, 2002 the firms entered into a Memorandum of Understanding, a condition of which to the closing of the agreement, was that at least 200 Arthur Andersen tax partners were required to accept offers of membership in Deloitte & Touche.

13. For every Arthur Andersen partner, that accepted membership in Deloitte & Touche, approximately 10 professional tax practice employees, would also be extended employment offers at Deloitte & Touche.

14. On April 19, 2002 Deloitte & Touche sent to Mr. Paul a formal written offer for him to join as a partner of their tax practice.

15. On April 30, 2002, the plaintiff accepted the employment offer, thereby becoming a member of Deloitte & Touche, LLP and Deloitte & Touche, USA, LLP.

16. On May 2, 2002, Deloitte & Touche confirmed the plaintiff's acceptance as a partner in the tax group in the Boston, Massachusetts office.

17. The letter of May 2, 2002 referred to in ¶15 also provided additional protection from removal for the first two years after closing, which occurred on April 30, 2002. The plaintiff signed the confirmation letter on May 4, 2002.

18. The plaintiff began his employment relationship with the defendants on May 8, 2002.

19. Thereafter, the first, and only performance evaluation of the plaintiff for the year 2003 was made by the defendants as "Good" and indicated that the plaintiff was "on track".

20. On February 16, 2004, the plaintiff had a mid-year performance review with the tax managing partner, Vince DeGutis. Nothing in the review of Mr. DeGutis indicated either any serious concerns with regards to his performance, nor any concerns to indicate that his relationship with Deloitte & Touche was in jeopardy.

21. Nine days after his mid-year performance review, on February 25, 2004, the plaintiff was presented with a "draft" 90 day "Performance Improvement Plan" ("PIP").

22. There had been no discussions of possible institution of a Performance Improvement Plan at the mid-year performance review on February 16, 2004.

23. Upon information and belief, there were younger, similarly situated employees with poorer performances, who were not given similar Performance Improvement Plans, nor terminated.

24. The Performance Improvement Plan presented to the plaintiff contained no objective standards or goals by which to measure the plaintiff's improved performance.

25. On March 4, 2004 the plaintiff met with Mr. DeGutis to discuss the "draft" PIP and the fact that the PIP set forth no objective criteria against which his performance could be measured.

26. Again, on March 8, 2004 the plaintiff met with Mr. DeGutis to discuss specific goals that he would be required to meet over the next three months. Neither Mr. DeGutis nor any other person affiliated with the defendants provided any clarity regarding the plaintiff's PIP goals, and his efforts to obtain such clarity were rebuffed.

27. The following day, after the second meeting with Mr. DeGutis, on March 9, 2004, the plaintiff was given the same PIP (previously presented to the plaintiff on February 25, 2004) with no changes accept for the word "draft" was removed.

28. Plaintiff was informed on March 9, 2004 that the 90 day performance improvement had commenced February 25, 2004, upon the receipt of the "draft" PIP. This meant that the 90 days would come to an end on May 26, 2004.

29. On March 10, 2004 the plaintiff again met with Mr. DeGutis to continue to attempt to document the expectations under the PIP. The performance expectations set forth were in areas of revenue generation, targeting activities, and sales, required performance that would exceed the performance of the average similarly situated employee, as compared to the plan for comprehensive tax solutions ("CTS") sales and revenue.

30. As of the end of the defendant's fiscal year, May 28, 2004, the plaintiff had the fifth highest total of CTS sales in the Boston office, out of 18 partners, ranked second in CTS introductions, and despite no longer being employed by the defendants, ranked first in CTS revenue in the Boston office through the third period of fiscal year 2005.

31. On April 8, 2004, less than 40 days into the 90 day PIP period, the plaintiff was advised that he was going to be terminated.

32. When the plaintiff, on notification of his termination, attempted to engage in a discussion regarding a possible unit adjustment (i.e., a reduction in the plaintiff's compensation) such suggestions were dismissed as "not practical" and it was suggested that the plaintiff "go quietly" or the defendants would make his professional life "difficult".

33. Based upon the provisions of the PIP the plaintiff would have 90 days to improve his performance, although the plaintiff's performance had formerly been determined as "good" and "on track" it was clear that the decision to terminate was made prior to the plaintiff being given the "draft" PIP and the entire PIP process was a pretext by which the defendants hid their discriminatory intent.

34. On April 12, 2004, a committee consisting of six (6) partners and principles of Deloitte & Touche met and confirmed the plaintiff's termination.

35. On April 27, 2004 the plaintiff received a hand delivered letter, dated April 22, 2004 notifying the plaintiff of Deloitte & Touche's decision to terminate him effective May 27, 2004.

36. Upon information and belief the plaintiff was one of a disproportionate number of employees over 40 years of age whose employment was terminated while other younger employees with similar or worse performances were retained.

37.  As a direct and proximate result of the discriminatory actions of the defendants, the plaintiff has lost in the past, and will lose in the future large sums of income and suffer damages to his earning capacity.

## COUNT I

### Discrimination Under 29 U.S.C.§621 et.seq.

38.  The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 37.

39.  The actions of the defendants in terminating the employment of the plaintiff was a result of discriminatory animus based upon the plaintiff's age, in violation of 29 U.S.C. §621 et.seq.

40.  The actions of the defendants as described herein were willful.

## COUNT II

### Discrimination Under 19 Del.C. §711

41.  The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 40.

42.  As a direct and proximate result of the conduct of the defendants, described herein, the plaintiff has suffered, and will continue to suffer great pain and mental anguish.

43.  The actions of the defendants as described herein were the result of discrimination based upon the plaintiff's age, in violation of 19 Del.C. §711, et.seq.

## COUNT III

### Breach of the Covenant of Good Faith and Fair Dealing

44.  The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 43.

45. The defendants' removal of the plaintiff was arbitrary and unreasonable in an effort to prevent him from obtaining the fruits of the contractual agreement between the plaintiff and the defendant.

46. The defendants' termination of the plaintiff was based upon fraud, deceit, or misrepresentation for the purpose of preventing him from obtaining benefits due him under the contract with the defendants.

## COUNT IV

### Breach of Contract

47. The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 46.

48. The actions by the defendants as described herein where a breach of the contractual obligation between the plaintiff and defendants, in the means, manner, and reasons for his termination.

## COUNT V

### Discrimination -M.G.L. c 151B, Section 4(1)

49. The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 48.

50. The plaintiff has suffered discrimination in the terms, conditions, and privileges of employment in violation of the Massachussetes Fair Employment Practices Act, M.G.L. c 151B, Section 4(1), by, among other things, denying him his employment, by terminating his employment on the basis of his age.

51. As a direct and proximate result thereof the plaintiff has suffered and continues to suffer damages, including but not limited to a loss of income and loss of employment benefits.

    <u>52.</u>    As a further direct and proximate result of the conduct of the defendants' conduct described herein, the plaintiff has suffered and will continue to suffer great pain, mental anguish, and emotional distress.

WHEREFORE, the plaintiff requests this Court to:

    a.    Enter a judgment against the defendant.

    b.    Enter a declaratory judgment stating that the actions of the defendant are in violation of the plaintiff's rights.

    c.    Enter a judgment against the defendant for compensatory damages, including lost wages.

    d.    Enter a judgment against the defendant for liquidated damages as provided by 29 <u>U.S.C.</u> §621 et.seq.

    e.    Grant Injunctive relief to the plaintiff restoring his employment.

    f.    Award the plaintiff the cost, interest, and attorney fees for this lawsuit.

    g.    Award such other and further relief as this Court deems just and appropriate.

ABER, GOLDLUST, BAKER & OVER

_____/s/ Gary w. Aber_____
GARY W. ABER (DSB #754)
First Federal Plaza, Suite 600
702 King Street, P.O. Box 1675
Wilmington, DE 19899
302-472-4900

DATED: June 27, 2006    Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that two copies of the attached pleading were hand delivered to the following counsel on June 27, 2006:

>Sheldon N. Sandler, Esquire
>Young, Conaway, Stargatt & Taylor
>1000 West Street, 17th Floor
>P.O. Box 391
>Wilmington, DE  19899

>/s/ Melissa A. Chionchio
>Melissa A. Chionchio
>Secretary to Gary W. Aber, Esquire