## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALLAN D. PAUL, | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-225-KAJ |
| v. | ) | |
| | ) | |
| DELOITTE & TOUCHE, LLP, | ) | |
| and DELOITTE & TOUCHE, USA, LLP, | ) | Trial By Jury Demanded |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO STRIKE OR, ALTERNATIVELY, TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Sheldon N. Sandler (No. 245)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
ssandler@ycst.com
Attorneys for Defendants

DATED: July 12, 2006

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 1

SUMMARY OF ARGUMENT ........................................................................................... 2

STATEMENT OF FACTS .................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

I.    PLAINTIFF'S SECOND AMENDED COMPLAINT, WHICH
      WAS SERVED WITHOUT THE REQUISITE LEAVE OF
      COURT, IS VOID AND WITHOUT LEGAL EFFECT AND,
      THEREFORE, MUST BE STRICKEN ................................................................... 4

      A.    Plaintiff Exhausted His Right to Amend "Once as a Matter
            of Course" When He Served His First Amended
            Complaint ...................................................................................................... 4

      B.    Plaintiff's Failure to Seek Leave of Court Before Serving
            the Second Amended Complaint Voids the Attempted
            Filing, Which Is Now Without Any Legal Effect .......................................... 5

II.   EVEN IF THE PROPOSED AMENDMENT HAD BEEN
      SUBMITTED TO THE COURT, LEAVE TO AMEND SHOULD
      HAVE BEEN DENIED AS FUTILE BECAUSE DIVERSITY
      JURISDICTION DOES NOT EXIST AND BECAUSE
      PLAINTIFF HAD FAILED TO PREVIOUSLY ATTEMPT TO
      CURE THE JURISDICTIONAL DEFICIENCIES ................................................ 6

      A.    Amendment Would Be Futile Because Assertion of
            Diversity Jurisdiction Would Fail as a Matter of Law .................................. 7

      B.    Plaintiff Previously Failed to Allege Diversity Jurisdiction
            in Spite of Clear Opportunities to Do So ..................................................... 9

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

<u>Page</u>

**CASES**

Allen v. City of Beverly Hills,
    911 F.2d 367 (9th Cir. 1990) .................................................................. 10

Baker v. Murphy,
    495 F. Supp. 462 (D.P.R. 1980) ............................................................... 10

Breiner v. Litwhiler,
    No. 03-1543, 2004 U.S. App.
    LEXIS 5400 (3d Cir. Mar. 23, 2004) ......................................................... 5

Carden v. Arkoma Assoc.,
    494 U.S. 185 (1990) ................................................................................. 8

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,
    282 F.3d 83 (2d Cir. 2002) ....................................................................... 9

Foman v. Davis,
    371 U.S. 178 (1962) ................................................................................. 6

HB Gen. Corp. v. Manchester Partners,
    95 F.3d 1185 (3d Cir. 1996) ..................................................................... 8

Heyl & Patterson Int'l, Inc.,
    663 F.2d 419 (3d Cir. 1981) ..................................................................... 7

In re Burlington Coat Factory Secs. Litig.,
    114 F.3d 1410 (3d Cir. 1997) ................................................................... 7

In re Federated Dep't Stores, Inc. Secs. Litig.,
    00-CV-6362-(RCC), 2005 U.S. Dist.
    LEXIS 4743 (S.D.N.Y. Mar. 25, 2005) ..................................................... 10

Jablonski v. Pan Amer. World Airways, Inc.,
    863 F.2d 289 (3d Cir. 1988) ..................................................................... 7

Lake v. Arnold,
    232 F.3d 360 (3d Cir. 2000) ..................................................................... 6

Lincoln Property Co. v. Roche,
    126 S. Ct. 606 (2005) ............................................................................... 8

ii

Litig. of MDIP, Inc. v. Rapoport,
   C.A. No. 03-779-GMS, 2005 U.S. Dist.
   LEXIS 9901 (D. Del. May 25, 2005) ............................................................... 9

Massarksky v. Gen. Motors Corp.,
   706 F.2d 111 (3d Cir.), cert. denied, 464 U.S. 937 (1983) ................................ 7

McGovern v. Amer. Airlines, Inc.,
   511 F.2d 653 (5th Cir. 1975) .......................................................................... 10

Shamrock Holdings of Cal. v. Arenson,
   C.A. No. 04-1339-SLR, 2005 U.S. Dist.
   LEXIS 2509 (D. Del. Jan. 27, 2005) ................................................................ 8

Straub v. Desa Indus., Inc.,
   C.A. No. 79-859, 1980 U.S. Dist.
   LEXIS 16167 (M.D. Pa. May 30, 1980)........................................................ 5, 6

Tri-State Judicial Servs., Inc. v. Markowitz,
   624 F. Supp. 925 (S.D.N.Y. 1985) ................................................................... 9

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1332........................................................................................................ 6

6 Wright & Miller, Fed. Practice & Proc., § 1484 ................................................... 6

6 Wright & Miller, Fed. Practice & Proc., §1487.................................................... 9

DB02:5421261.1                                                                                   064406.1002

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, a citizen of Massachusetts and a former partner in Defendants' accounting firms, filed suit in this Court alleging that his termination violated the federal Age Discrimination in Employment Act and the Delaware Discrimination in Employment Act, and constituted a breach of the Delaware common law implied covenant of good faith and fair dealing and a breach of his partnership agreements. A Motion to Dismiss the state law claims was filed and briefed by Defendants. (D.I. 5-6).

Plaintiff then filed an Amended Complaint adding a Count V based on the Massachusetts Fair Employment Practices Act, (D.I. 7), and, later, voluntarily dismissed his claim under the Delaware Discrimination statute. (D.I. 9 at 5). Defendants responded with a Motion to Dismiss Count V of the Amended Complaint, in reliance on the forum selection provisions of the parties' partnership agreements. (D.I. 12). On June 27, 2006, Plaintiff served a "Second Amended Complaint." (D.I. 15). This third iteration of the Complaint differed from its predecessor in only one respect. The third version alleges diversity of citizenship as an additional basis for the Court's jurisdiction.

Defendants have now moved to strike the Second Amended Complaint on the ground that Plaintiff failed to seek leave of the Court or consent of Defendants prior to serving the pleading and it is, therefore, a void filing without legal effect pursuant to Federal Rule of Civil Procedure 15(a). The untimely filing, once stricken from the record, would reinstate the Plaintiff's First Amended Complaint as the proper pleading before the Court for consideration. For that reason, Defendants have also moved to renew their Motion to Dismiss Plaintiff's First Amended Complaint, which is currently pending before this Court. This is Defendants' opening brief in support of their motion.

1

## SUMMARY OF ARGUMENT

Plaintiff filed his Second Amended Complaint without leave of court pursuant to Rule 15(a). Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading only once as a matter of right at any time prior to the filing of a responsive pleading. Having exhausted this option with his First Amended Complaint, Plaintiff was required to seek leave of the Court or consent of Defendants prior to filing any additional amendments. Plaintiff failed to seek such leave and served his Second Amended Complaint without leave of court or consent of Defendants. Plaintiff's Second Amended Complaint is, therefore, deemed void and without legal effect and must be stricken from the record.

Even if the amendment had been properly submitted, leave to amend should have been denied because the proposed amendment is futile and because Plaintiff had the opportunity to attempt to cure his jurisdictional deficiencies in prior iterations of his Complaint. Therefore, Plaintiff's Second Amended Complaint must be stricken and, as argued in Defendants' pending Motions to Dismiss, Count V of Plaintiff's First Amended Complaint must be dismissed for lack of jurisdiction and failure to state a claim upon which relief can be granted.

2

## STATEMENT OF FACTS

Plaintiff, Alan D. Paul (whose first name is misspelled in the Complaint as "Allan") was one of several hundred former partners of the Arthur Andersen accounting firm. (D.I. 7 at ¶9), who were offered partnerships in Defendants' accounting firms in April 2002. (D.I. 7 at ¶¶9-12). Plaintiff accepted the partnership offer on April 30, 2002 and became a member of Defendants' partnerships, working as a partner in the Boston, Massachusetts office (D.I. 7 at ¶¶14-15). In the Massachusetts office, Plaintiff worked with other partners who were also citizens of that State. (D.I. 15 at ¶20).

Plaintiff was terminated from the partnerships by letter dated April 22, 2004 due to his failure to meet performance expectations. (D.I. 1 at ¶¶20, 28, 33-34). Plaintiff's birth date is June 2, 1949 and at the time of his termination, he was 54 years old. (D.I. 7 at ¶8). He alleges that he filed charges of age discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission on December 13, 2004. (D.I. 7 at ¶7). He does not allege that he filed a charge with the Delaware Department of Labor

Plaintiff filed suit in this Court on April 6, 2006, alleging that venue in this Court is proper because his partnership agreements require that all litigation occur in Delaware and that the Defendants reside in Delaware. (D.I. 7 at ¶6). In his Second Amended Complaint, he alleges that diversity jurisdiction permits the Court to hear matters arising under the laws of the Commonwealth of Massachusetts. (D.I. 7 at ¶5).

3

## ARGUMENT

I.    **PLAINTIFF'S SECOND AMENDED COMPLAINT, WHICH WAS SERVED WITHOUT THE REQUISITE LEAVE OF COURT, IS VOID AND WITHOUT LEGAL EFFECT AND, THEREFORE, MUST BE STRICKEN.**

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend its pleading only once as a matter of right. Fed. R. Civ. Proc. 15(a). After an initial amendment has been made, the party is required to seek leave of court or consent of the adverse party before it may file any additional amendments. Should the party fail to seek leave of court as required and file a second amendment, such amendment is deemed void and without legal effect. Because Plaintiff failed to seek the requisite leave of court prior to serving his Second Amended Complaint, the amended pleading is without legal effect and must be stricken from the record.

### A.    Plaintiff Exhausted His Right to Amend "Once as a Matter of Course" When He Served His First Amended Complaint.

Plaintiff served his initial Complaint on April 6, 2006. (D.I. 1). Defendants moved the Court to dismiss the Complaint for lack of subject matter jurisdiction over the Delaware state law claims. (D.I. 5). In his Answering brief, Plaintiff voluntarily dismissed his claim under the Delaware discrimination statute. (D.I. 9 at 5). Attempting to cure the jurisdictional deficiencies, Plaintiff amended his Complaint for the first time on May 25, 2006, adding a claim under Massachusetts state law. (D.I. 7). In response, Defendants moved to dismiss the Amended Complaint on the ground that Plaintiff's newly added Massachusetts state law claim was barred by the choice of law provision contained within the parties' partnership agreements. (D.I. 12)

On June 27, 2006, Plaintiff served his Second Amended Complaint in which he asserts diversity jurisdiction for the first time. (D.I. 15). In his notice of service, Plaintiff flatly states that the Second Amended Complaint was served pursuant to Rule 15(a) "as a matter of right, the

defendants having not served a responsive pleading to the complaint." (D.I. 15)  Plaintiff did

not seek leave of court before filing his Second Amended Complaint.

    **B.**    **Plaintiff's Failure to Seek Leave of Court Before Serving the
Second Amended Complaint Voids the Attempted Filing,
Which Is Now Without Any Legal Effect**

Plaintiff's assertion that his pleading was served "as a matter of right" is incorrect.  As

the United States Court of Appeals for the Third Circuit has clearly explained, "under Rule 15(a)

of the Federal Rules of Civil Procedure, *a party may amend a complaint without leave of court*

*only once*, and [] additional amendments may be made only by leave of court or by written

consent of the adverse party." Breiner v. Litwhiler, No. 03-1543, 2004 U.S. App. LEXIS 5400,

at *6 (3d Cir. Mar. 23, 2004) (internal citations omitted) (emphasis supplied).  Plaintiff's First

Amended Complaint was taken without leave of court, as a matter of right pursuant to Rule

15(a).  His Second Amended Complaint, then, required either the approval of the Court or the

consent of Defendants prior to filing.

Because the Second Amended Complaint was served without leave of court or consent of

the other parties, it is deemed void and is without legal effect.  Straub v. Desa Indus., Inc., C.A.

No. 79-859, 1980 U.S. Dist. LEXIS 16167, at *5 (M.D. Pa. May 30, 1980).  Plaintiff's new

claim of diversity jurisdiction, therefore, may not be considered by the Court.  Id. (stating that

"any new matters" will not be considered).

DB02:5421261.1    064406.1002

**II.    EVEN IF THE PROPOSED AMENDMENT HAD BEEN SUBMITTED TO THE COURT, LEAVE TO AMEND SHOULD HAVE BEEN DENIED AS FUTILE BECAUSE DIVERSITY JURISDICTION DOES NOT EXIST AND BECAUSE PLAINTIFF HAD FAILED TO PREVIOUSLY ATTEMPT TO CURE THE JURISDICTIONAL DEFICIENCIES.**

An untimely amended complaint, such as Plaintiff's, is deemed void and without legal effect. Straub, 1980 U.S. Dist. LEXIS at *5. Any new matters contained in the amendment must be resubmitted to the court before they may be considered. Id. Some courts, however, will permit an untimely amended pleading to avoid dismissal where leave to amend would have been granted, had it been timely requested, so long as the other party will not be prejudiced by the change. Id. (citing 6 Wright & Miller, Fed. Practice & Proc., § 1484, at p. 241). And, while the rule requires that leave to amend should be "freely given," the court has the discretion to deny leave if it is clear from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, (3) the moving party had repeatedly failed to cure deficiencies by previous amendments, or (4) the amendment would prejudice the other party. Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 183 (1962)). In the present case, even if a timely request to amend would have been made, it should have been denied for at least two of these reasons.

First, the proposed amendment is a futile attempt to assert diversity jurisdiction. The only change in Plaintiff's Second Amended Complaint is the addition of the diversity statute, 28 U.S.C. § 1332, as a basis for the Court's jurisdiction. (D.I. 15 at ¶6). Complete diversity does not exist between the parties and, therefore, a new claim of diversity jurisdiction must fail. The only new matter asserted in the Second Amended Complaint would be subject to dismissal, thereby rendering the amendment futile.

Second, Plaintiff had the opportunity to attempt to cure any jurisdictional deficiencies in his initial amendment. Plaintiff has not alleged any new facts that would justify

6

his prior failure to assert diversity jurisdiction. Plaintiff's failure to assert diversity jurisdiction in his First Amended Complaint weighs strongly against granting additional opportunities to amend.

For these reasons, leave to amend, had it been timely requested, should not have been granted. Because leave to amend should not have been granted, there is no reason whatsoever to make an exception to the general rule, which provides that Plaintiff's Second Amended Complaint is considered void and is without legal effect. Therefore, Defendants' Motion to Strike must be granted.

### A.  Amendment Would Be Futile Because Assertion of Diversity Jurisdiction Would Fail as a Matter of Law.

Leave to amend should be denied where the proposed amendment would be futile. See Heyl & Patterson Int'l, Inc., 663 F.2d 419, 426 (3d Cir. 1981). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan Amer. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (citing Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir.), cert. denied, 464 U.S. 937 (1983)); see also In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (holding that "futility" is defined as the 12(b)(6) standard for legal sufficiency). Plaintiff's complaint, as twice amended, fails to state a claim upon which relief can be granted as briefed in Defendants' Motions to Dismiss, which are currently pending before this Court. (D.I. 6 & 13).

The only substantive change in Plaintiff's Second Amended Complaint is the addition of Paragraph 6 in which he asserts diversity jurisdiction. (D.I. 15 at ¶6). Prior to the second amendment, Plaintiff asserted federal question jurisdiction as the basis for his ADEA claim and supplemental jurisdiction for his Massachusetts and Delaware state law claims. (D.I. 7

7

at ¶¶4-5). In their Motions to Dismiss, Defendants assert that the governing partnership agreements require the dismissal of the Massachusetts claim. (D.I. 12). Further, supplemental jurisdiction does not exist for the remaining Delaware state law claims for breach of contract and breach of implied covenant because they do not share a common nucleus of fact with the federal age discrimination claim. (D.I. 5; D.I. 12). The Massachusetts and Delaware claims, therefore, must be dismissed for lack of subject matter jurisdiction.

The addition of Paragraph 6, however, cannot redeem Plaintiff's complaint. Because all parties are citizens of Massachusetts, diversity jurisdiction does not exist. Plaintiff's newly asserted basis for jurisdiction for the state law claims fails as a matter of law. Amendment of the complaint on this basis would, therefore, be futile.

Plaintiff is a citizen of Massachusetts. (D.I. 15 at ¶1). Defendants, which are limited liability partnerships, (D.I. 15 at ¶2), are also residents of Massachusetts. It is well-settled that, for purposes of diversity jurisdiction, a partnership is considered a citizen of each state in which its partners are citizens. HB Gen. Corp. v. Manchester Partners, 95 F.3d 1185, 1190 (3d Cir. 1996); accord Shamrock Holdings of Cal. v. Arenson, C.A. No. 04-1339-SLR, 2005 U.S. Dist. LEXIS 2509, at *10-11 (D. Del. Jan. 27, 2005). The United States Supreme Court has explained that, for a partnership "to meet the complete diversity requirement [of Section 1332], all partners . . . must be diverse from all parties on the opposing side." Lincoln Property Co. v. Roche, 126 S. Ct. 606, n.1 (2005) (citing Carden v. Arkoma Assoc., 494 U.S. 185, 189 (1990)).

Plaintiff worked in Defendants' Boston, Massachusetts office with other partners who are also citizens of Massachusetts. See (D.I. 15 at ¶¶16-20). Because Defendants have partners who are citizens of Massachusetts, Defendants are considered Massachusetts citizens. See HB Gen. Corp., 95 F.3d at 1190. Because both parties are Massachusetts citizens, complete

8

diversity does not exist and diversity jurisdiction would fail as a matter of law. <u>Litig. of MDIP,</u>

<u>Inc. v. Rapoport</u>, C.A. No. 03-779-GMS, 2005 U.S. Dist. LEXIS 9901, at *10-11 (D. Del. May

25, 2005) (explaining that complete diversity requires that the citizenship of every plaintiff must

be diverse from the citizenship of every defendant). It would be futile for the court to grant leave

to assert an additional basis for jurisdiction that is unsupportable at law. <u>See Tri-State Judicial</u>

<u>Servs., Inc. v. Markowitz</u>, 624 F. Supp. 925, 926 (S.D.N.Y. 1985) (denying motion to amend the

complaint to add an additional defendant where the court lacked personal jurisdiction over that

defendant).

    **B.**    **Plaintiff Previously Failed to Allege Diversity Jurisdiction in**
          **Spite of Clear Opportunities to Do So.**

    Leave to amend should be denied where the plaintiff has failed to cure

deficiencies through previous amendments. <u>See e.g.</u>, <u>Dougherty v. Town of N. Hempstead Bd.</u>

<u>of Zoning Appeals</u>, 282 F.3d 83, 87 (2d Cir. 2002); 6 Wright & Miller, <u>Fed. Practice & Proc.</u>, at

§1487 ("where plaintiff has had sufficient opportunity to state a claim but has failed to so, leave

to amend may be denied"). Plaintiff was first put on notice of jurisdictional deficiencies when

Defendants filed their Motion to Dismiss on the grounds that this Court does not have subject

matter jurisdiction over Plaintiff's Delaware state law claims. (D.I. 5). In response, Plaintiff

amended his Complaint to include a claim under Massachusetts state law, apparently attempting

to avoid dismissal for lack of supplemental jurisdiction. (D.I. 7 at ¶5). Defendants moved to

dismiss the Massachusetts claim on the ground that the governing partnership agreements require

the exclusive application of Delaware law. (D.I. 12). Plaintiff then served his Second Amended

Complaint in anticipation of an adverse ruling on the Defendants' motions for judgment on the

pleadings.

9

This third bite at the jurisdictional apple must not be permitted. See In re Federated Dep't Stores, Inc. Secs. Litig., 00-CV-6362-(RCC), 2005 U.S. Dist. LEXIS 4743, at *17 (S.D.N.Y. Mar. 25, 2005) (denying leave to amend where plaintiff had filed previous amendments but had failed to cure the pleading deficiencies even though it was put on notice of such deficiencies). Plaintiff has presented no new facts, only a faulty assertion of jurisdiction and has provided no explanation for his failure to assert this claim during his previous amendment. See Allen v. City of Beverly Hills, 911 F.2d 367 (9th Cir. 1990) (denying leave to amend on the grounds that there were no additional facts and no explanation for the plaintiff's failure to develop the new theory in two previous amendments). Regardless of being put on notice of the jurisdictional defects in his original Complaint, Plaintiff failed to attempt to cure such defects in his First Amended Complaint. Plaintiff must not now be allowed an opportunity to amend in an effort to cure defective jurisdiction, especially where "there is no indication in the record that diversity in all probability exists and the [plaintiff] has shown . . . no inclination to cure the jurisdictional defect even though on notice of the defect . . . ." McGovern v. Amer. Airlines, Inc., 511 F.2d 653, 654 (5th Cir. 1975).

At some point, the court is "confronted with the problem of how far [to go] when the amended complaints fail to cure the defect of the prior ones. Clearly, a party that repeatedly fails to adequately plead jurisdiction in spite of opportunities given to amend its complaint has no place in the federal courts." Baker v. Murphy, 495 F. Supp. 462, 464 (D.P.R. 1980). It is "an intolerable imposition" on the Court's time and resources to grant Plaintiff the opportunity to amend, when Plaintiff has failed to adequately plead on previous occasions. Id.

Plaintiff's Second Amended Complaint, which was served without leave of Court or consent of Defendants, is void and without legal effect and must be stricken. Even if Plaintiff

10

had timely moved the Court for leave to amend his complaint by adding diversity of citizenship as the basis for the Court's jurisdiction, the request should have been denied. There is no basis for diversity jurisdiction because all parties are citizens of the same state. As such, an amended complaint asserting such jurisdiction would be futile.

Further, Plaintiff has had sufficient notice of his jurisdictional defects and, yet, has failed to attempt to cure them in his First Amended Complaint. Indeed, Defendants have already filed two motions to dismiss. Plaintiff took full advantage of the arguments contained within those motions by amending his complaint. Plaintiff's previous failure to cure the jurisdictional defects of his complaint bars him from now changing his theories in an attempt to avoid dismissal. Therefore, Defendant's Motion to Strike Plaintiff's Second Amended Complaint must be granted.

11

## CONCLUSION

For the reasons discussed, Plaintiff's Second Amended Complaint should be stricken and Count V in the First Amended Complaint should be dismissed.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sheldon N. Sandler (Bar I.D. 245)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
ssandler@ycst.com
Attorneys for Defendants

DATED: July 12, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2006, I electronically filed a true and correct copy

of the foregoing **Defendants' Opening Brief in Support of Their Motion to Strike or,**

**Alternatively, to Dismiss Plaintiff's Second Amended Complaint** with the Clerk of the Court

using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record. A courtesy copy of such **Defendants' Opening**

**Brief in Support of Their Motion to Strike or, Alternatively, to Dismiss Plaintiff's Second**

**Amended Complaint** was also hand delivered to the following counsel of record on this date.

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899-1675


YOUNG CONAWAY STARGATT & TAYLOR, LLP


Sheldon N. Sandler (Bar I.D. 245)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
ssandler@ycst.com
Attorneys for Defendants

DATED: July 12, 2006

064649 1001

LEXSEE 2004 US APP LEXIS 5400

**PAUL G. BREINER; MARSHA L. BREINER; ANGELA SERFAS; WEST PENN TOWNSHIP ANDREAS NO. 1; ANDREAS VOLUNTEER FIREFIGHTER'S RELIEF ASSOCIATION; BYRON HESS, Appellants v. SUZANNE LITWHILER; JAMES TIERNEY; BRIAN JOHNSON; LEROY BREINER; ALAN PARKER; ERNEST BOERNER; SAMUEL A. SOLEY; WEST PENN FIRE COMPANY # 1; W PENN TOWNSHIP; PAUL DATTE**

**No. 03-1543**

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

*98 Fed. Appx. 75; 2004 U.S. App. LEXIS 5400*

**December 2, 2003, Submitted Under Third Circuit Lar 34.1(a)
March 23, 2004, Filed**

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On appeal from the Memorandum and Order of the Honorable Thomas I. Vanaskie of the United States Court for the Middle District of Pennsylvania. (D. C. Civil No. 3: 00–cv–00594). *Breiner v. Litwhiler, 245 F. Supp. 2d 614, 2003 U.S. Dist. LEXIS 2445 (M.D. Pa., 2003)*

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a dispute between a newly formed volunteer fire department and an existing volunteer fire department, many of the issues underlying the claims of appellants, the old department and members, had been decided against them in prior litigation in state court. The United States District Court for the Middle District of Pennsylvania granted the motion for summary judgment of appellees, the new department and members. This appeal followed.

**OVERVIEW:** In a 42 U.S.C.S. § 1983 case, appellants alleged that appellees violated their rights under the First, Fourth, and Fourteenth Amendments. The complaint also invoked the court's supplemental jurisdiction to assert state law claims for defamation, malicious prosecution, and civil conspiracy. The district court did not err in striking appellants' second amended complaint. Not only did it not comply with the requirements of Fed. R. Civ. P.

15(a), but the amendment would have been substantially prejudicial. A state court had already rejected appellants' claims that certain equipment was illegally transferred to the new fire department. Since those claims formed the basis of their First, Fourth, and Fourteenth Amendment claims in the present case, the district court properly found that appellants were precluded from relitigating those issues. In regards to those claims not resolved in the prior state cases, the district court properly concluded that the evidence did not support those claims.

**OUTCOME:** The judgment of the district court striking the second amended complaint and granting summary judgment dismissing the case was affirmed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
*Criminal Law & Procedure > Accusatory Instruments > General Overview*
[HN1] Under Fed. R. Civ. P. 15(a), party may amend a complaint without leave of court only once, and that additional amendments may be made only by leave of court or by written consent of the adverse party.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN2] In determining whether state court adjudications in prior cases barred plaintiffs from relitigating those issues in a federal district court, an appellate court applies the same preclusion rules as would the courts of that state.

98 Fed. Appx. 75, *; 2004 U.S. App. LEXIS 5400, **1

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*

[HN3] Under Pennsylvania law, collateral estoppel applies when the issue decided in the prior adjudication was identical with the one presented in the later action; there was a final judgment on the merits; the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication.

**COUNSEL:** For PAUL G. BREINER, MARSHA L. BREINER, ANGELA SERFAS, W PENN TWP ANDREAS, ANDREAS VOLUNTEER FIREFIGHTER'S RELIEF ASSOCIATION, BYRON HESS, Appellant: Donald A. Bailey, Harrisburg, PA.

For SUZANNE LITWHILER, JAMES TIERNEY, BRIAN JOHNSON, Appellee: Rolf E. Kroll, Badowski, Banko, Kroll, Kronthal & Baker, Harrisburg, PA. Shaun J. Mumford, Margolis Edelstein, Harrisburg, PA.

For LEROY BREINER, ALAN PARKER, ERNEST BOERNER, SAMUEL A. SOLEY, W PENN FIRE CO # 1, Appellee: Karen S. Coates, Harrisburg, PA.

For W PENN TWP, Appellee: Janine M. Torda, Carmen M. Rinkunas, Eiseman, Myers & Liero, Scranton, PA.

**JUDGES:** Before: SLOVITER, ALITO and FRIEDMAN, * Circuit Judges.

* Daniel M. Friedman, United States Senior Circuit Judge for the Federal Circuit, sitting by designation.

**OPINION:** [*76] OPINION OF THE COURT

FRIEDMAN, [**2] Circuit Judge.This case involves a dispute between two volunteer firefighting organizations in the same township over their respective roles there. The second organization had been recently formed by dissident members of the first organization, and the first and some of its members sued the former and its members in federal court. The district court held that many of the issues underlying the plaintiffs' claims had been decided against them in prior state court litigation (between the parties); and that collateral estoppel precluded the plaintiffs from relitigating those claims; the court also rejected for lack of supporting evidence the plaintiffs' other claims that had not been so litigated. The district court granted summary judgment for the defendants, dismissing the suit. We affirm.IFor many years Andres Fire Company

No. 1, a volunteer fire fighting organization, had been the recognized fire company of West Penn Township in Pennsylvania. Dissension developed within the organization, and in 1999 several of its members left the organization and formed West Penn No. 1 fire company. The township's Board of Supervisors officially recognized West Penn No. 1 as the township's [**3] firefighting organization. Two months later, at the scheduled quarterly meeting of the Andreas Volunteer Firefighter's Relief Association ("relief association"), a quorum of the association's members (mostly those who had left Andreas No. 1 to form West Penn No. 1) voted to transfer some of the firefighting equipment, including a rescue truck, to West Penn No. 1. Members of the relief association gained access to the Andreas No. 1 fire hall and removed the equipment and truck.Litigation in the Pennsylvania state courts soon followed. The first suit, originally an equity action that was converted to one for a declaratory judgment, sought deactivation of West Penn No. 1, re-recognition of Andreas No. 1 and the concomitant funding that it would entail, and a declaration that the removed equipment and truck belonged to Andreas No. 1. The court found that the township's recognition and funding of West Penn No. 1 was valid; the plaintiffs did not appeal that ruling.The second suit was a replevin action brought by Andreas No. 1 and the relief association seeking the return of the firefighting equipment that had been transferred to West Penn No. 1. West Penn returned the rescue truck [**4] to Andreas No. 1. The trial court then held that although the temporary transfer of the truck for use by West Penn No. 1 was authorized, ownership of the truck had remained with the relief association. A state appellate court upheld the trial court's finding that the transfer was valid, but remanded to the trial court to determine whether Andreas No. 1 or the relief association owned the truck and related equipment. The parties apparently resolved this issue and the state court action was terminated.While the two state court proceedings were still pending, Andreas No. 1, the relief association, and four of their members filed suit in the United States District Court for the Middle District of Pennsylvania against West Penn No. 1, eight of its members and the township. The amended complaint, filed under *42 U.S.C. § 1983 (2000)*, alleged that various of the defendants had violated various of the plaintiffs' constitutional rights under the *First, Fourth*, and *Fourteenth Amendments*. The complaint also invoked the court's supplemental jurisdiction to assert state law claims for defamation, malicious prosecution and civil conspiracy. [*77] In a lengthy opinion, the [**5] district court granted summary judgment for the defendants and dismissed the complaint. The court first dismissed the plaintiffs' second amended complaint because they had not complied with the court's requirement for filing such a document. The court held that the doctrines of issue or

claim preclusion barred the plaintiffs from litigating many of their *section 1983* claims because the issues underlying those claims had been decided against them in the prior state cases. The court also held that the claim relating to the transfer of the truck and equipment to West Penn No. 1 failed to state a valid claim under *section 1983* because it did not involve state action. The court further ruled that with respect to issues not so precluded, the plaintiffs had failed to present adequate evidentiary support for them. The court dismissed the supplemental state law claims without prejudice. Since the plaintiffs do not separately challenge that ruling, we need not address it further.IIA. Following the completion of discovery, the court gave the plaintiffs until August 31, 2001, "to file a motion for leave to amend the complaint with supporting brief." The plaintiffs did not file such a motion. [**6] Instead, on that date they filed a second amended complaint that added an additional claim and an additional party.The district court struck the second amended complaint for failure to seek judicial authorization for filing it. The court pointed out that [HN1] under *Rule 15(a) of the Federal Rules of Civil Procedure*, a party may amend a complaint without leave of court only once, and that additional amendments may be made "only by leave of court or by written consent of the adverse party." The court further stated that "even if Plaintiffs had sought leave to amend, the filing of a second amended complaint would not have been allowed," because such amendment would have "substantially prejudiced" the defendants.The district court did not abuse its discretion in striking the second amended complaint.B. [HN2] In determining whether the Pennsylvania state court adjudications in the prior cases barred the plaintiffs from relitigating those issues in the district court, we "apply the same preclusion rules as would the courts of that state." *Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993).* [HN3] Under Pennsylvania law, [**7]

> collateral estoppel applies when the issue decided in the prior adjudication was identical with the one presented in the later action; there was a final judgment on the merits; the party against whom the plea is asserted was

> a party or in privity with a party to the prior adjudication; and the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication.

*Murphy v. Duquesne Univ. of the Holy Ghost, 565 Pa. 571, 777 A. 2d 418, 435 (Pa. 2001).* In the prior Pennsylvania cases, the state courts rejected the plaintiffs' claims that the truck and equipment were illegally transferred to West Penn No. 1, and that the township had no authority to recognize and shift funding to West Penn No. 1. Those are the same issues that underlie the plaintiffs' *First, Fourth,* and *Fourteenth Amendment* claims. The district court correctly ruled that the plaintiffs were precluded from relitigating those issues in the present district court case. The district court also correctly held that the plaintiffs had not shown that the transfer of the firetruck and equipment to West [*78] Penn No. 1 involved state action; as [**8] a result their *section 1983* claim on that issue was fatally flawed.C. With respect to issues that had not been resolved in the prior state cases, the district court discussed the evidence on those issues at some length and properly concluded that it did not support the plaintiffs' claims. We need not repeat that discussion here. A single example is illustrative.The plaintiff Angela Serfass contended that the West Penn defendants violated her *First Amendment* rights by refusing to allow her to serve as Fire Police Captain after she had been elected to that post. She contended the defendants took that action because she was allied with the Andreas No. 1 faction. The defendants responded that she was denied the position because the township required that its holder be at least twenty-one years old (which she concededly was not when she was elected). The district court stated that "after she attained 21 years old, she was approved as Fire Police Captain." The court further stated that "there is absolutely no evidence that she was denied the position because of her affiliation with Andreas No. 1 or the Andreas Relief Association."The district court did not err in dismissing those [**9] claims for lack of evidentiary support.CONCLUSIONThe judgment of the district court striking the second amended complaint and granting summary judgment dismissing the case is affirmed.

LEXSEE 2005 US DIST LEXIS 4743

**IN RE FEDERATED DEPARTMENT STORES, INC. SECURITIES LITIGATION**

**00 CV 6362 (RCC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2005 U.S. Dist. LEXIS 4743; Fed. Sec. L. Rep. (CCH) P93,221*

**March 23, 2005, Decided**
**March 25, 2005, Filed**

**PRIOR HISTORY:** *In re Federated Dep't Stores, Inc., 2004 U.S. Dist. LEXIS 3769 (S.D.N.Y., Mar. 9, 2004)*

**DISPOSITION:** [*1] Defendants' motion to dismiss granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In their putative securities fraud class action, after their action was dismissed for failure to adequately plead scienter, plaintiff putative class of investors filed a second consolidated class action complaint, with additional allegations of scienter. Defendants, a company and three directors and officers, moved to dismiss.

**OVERVIEW:** The investors first argued that defendants were motivated to protect and enhance their positions in the company and to enhance the value of their substantial personal holdings. The court, however, concluded that the motive to maintain the appearance of corporate profitability, or the success of an investment, naturally involved benefit to a corporation, but did not entail concrete benefits; the allegations applied to any corporate defendant. The investors also failed to allege sufficiently that defendants knew or should have known about the company's customer receivables problem. The allegations did not state the specific facts to which defendants had access that contradicted their public statements. Although a weekly report showed 27.2 percent of the company's customer receivables were delinquent or at risk, the investors did not allege the report provided information that the bad debt reserve was too low to account for delinquencies. Further, that receivables and reserve policies were discussed in an unspecified manner during quarterly meetings did not constitute strong circumstantial evidence that defendants acted recklessly regarding the receivables problem at the company.

**OUTCOME:** The motion to dismiss was granted.

**LexisNexis(R) Headnotes**

*Securities Law > Liability > Private Securities Litigation > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
[HN1] A complaint alleging securities fraud must state the circumstances of the fraud with particularity. To state a cause of action under § 10(b) of the Securities Exchange Act of 1934, *15 U.S.C.S. § 78j*(b), and S.E.C. Rule 10b–5, *17 C.F.R. § 240.10b–5*, a plaintiff must plead that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury. Scienter, the requisite state of mind under § 10(b) of the Securities Exchange Act of 1934, *15 U.S.C.S. § 78j*(b), and S.E.C. Rule 10b–5, *17 C.F.R. § 240.10b–5*, is defined as an intent to deceive, manipulate or defraud.

*Civil Procedure > Remedies > Damages > Monetary Damages*
*Securities Law > Liability > Private Securities Litigation > General Overview*
[HN2] See *15 U.S.C.S. § 78u–4*(b)(2).

*Securities Law > Liability > Private Securities Litigation > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Motive & Opportunity*
[HN3] To adequately plead scienter under the Private Securities Litigation Reform Act, the plaintiffs must either allege facts demonstrating a motive and opportunity to commit fraud, or facts constituting strong circumstantial evidence of conscious misbehavior or recklessness.

2005 U.S. Dist. LEXIS 4743, *1; Fed. Sec. L. Rep. (CCH) P93,221

*Securities Law > Liability > Private Securities Litigation > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
[HN4] The motive to maintain the appearance of corporate profitability, or the success of an investment, will naturally involve benefit to a corporation, but does not entail concrete benefits.

*Securities Law > Liability > Private Securities Litigation > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
[HN5] Securities fraud claims typically suffice to state a claim based on recklessness when they specifically allege the defendants' knowledge of facts or access to information contradicting their public statements.

*Securities Law > Liability > Private Securities Litigation > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
[HN6] Where a plaintiff fails to demonstrate that the defendants had a motive to defraud, he must produce a stronger inference of recklessness.

*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Issuer Recordkeeping & Reporting > General Overview*
*Securities Law > Liability > Private Securities Litigation > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
[HN7] Generally Accepted Accounting Principles violations without corresponding fraudulent intent cannot establish scienter.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN8] Leave to replead shall be freely granted under *Fed. R. Civ. P. 15(a)* unless, among other reasons, the plaintiff has repeatedly failed to cure deficiencies through amendments previously allowed.

**COUNSEL:** For Samuel Muller, Individually and On Behalf Of All Others Similarly Situated, Plaintiff: Brad Nelson Friedman, Steven G. Schulman, Milberg Weiss Bershad & Schulman LLP, New York, NY; Samuel Howard Rudman, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, Melville, NY; Sandy A

Liebhard, Bernstein Liebhard & Lifshitz, LLP, New York, NY.

For Federated Department Stores Inc., James M. Zimmerman, Ronald W. Tysoe, Karen M. Hoguet, Defendants: Barbra Spalten Levy, McCarter and English, Newark, NJ; Bonnie L. Hemenway, Jones Day, New York, NY; Gregory J. Ritts, Nixon, Hargrave et al., Rochester, NY; John M. Newman, Jr., JONES, DAY, REAVIS & POGUE, New York, NY.

For Sekuk Global Enterprises, Killian Asset Management Corporation, Linda Lee Alter, Consol Plaintiffs: Brad Nelson Friedman, Steven G. Schulman, Milberg Weiss Bershad & Schulman LLP, New York, NY; Samuel Howard Rudman, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, Melville, NY.

For Kendall Trust through Trustee Kenneth Slater, Richard G. Baum, Jeanette Baum, Consol Plaintiffs: Brad Nelson Friedman, Milberg Weiss Bershad & Schulman LLP, New York, NY; Frederick Taylor Isquith, [*2] Sr, Wolf, Haldenstein, Adler, Freeman & Herz, L.L.P., New York, NY.

For Howard Gunty Profit, Michael Caesar, Consol Plaintiffs: Brad Nelson Friedman, Milberg Weiss Bershad & Schulman LLP, New York, NY; Joseph H. Weiss, Weiss & Yourman, New York, NY.

**JUDGES:** Richard Conway Casey, U.S.D.J.

**OPINIONBY:** Richard Conway Casey

**OPINION:**

### MEMORANDUM & ORDER

**Richard Conway Casey, U.S.D.J.:**On March 11, 2004, the Court dismissed without prejudice this putative securities–fraud class action for failure to adequately plead scienter as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *15 U.S.C. § 78u–4(b)(2)*. Plaintiffs, a putative class of investors, then filed a Second Consolidated Class Action Complaint ("SAC") with additional allegations of scienter. Defendants—Federated Department Stores, Inc. ("Federated"), and three Federated directors and officers—filed a motion to dismiss the SAC. For the reasons that follow, the motion is **GRANTED**.

**I. BACKGROUND**As the Court has already set out the facts in detail, see *In re Federated Department Stores, Inc. Secs. Litig., 2004 U.S. Dist. LEXIS 3769, No. 00*

Case 1:06-cv-00225-MPT    Document 17    Filed 07/12/2006    Page 23 of 41

Page 3

2005 U.S. Dist. LEXIS 4743, *2; Fed. Sec. L. Rep. (CCH) P93,221

CV 6362 (RCC), 2004 WL 444559, [*3] *at *1-*2 (S.D.N.Y. Mar. 11, 2004)* ("Federated I"), it will only recount those facts necessary to resolution of this motion. Facts in the complaint are assumed to be true. See *DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003)*.Plaintiffs are a putative class of investors who purchased common stock in Federated, a corporation that owns over 400 department stores, from February 23, 2000 through July 20, 2000 ("the Class Period"). At the end of fiscal year 2000, Federated had assets of over $17 billion and sales of $18.4 billion. Defendant James M. Zimmerman was Federated's Chief Executive Officer, Chairman, and a director; Defendants Ronald W. Tysoe and Karen M. Hoguet were Federated Vice Chairmen and directors (together with Federated, "Defendants").In March 1999, Federated purchased Fingerhut Companies, Inc. ("Fingerhut"), a catalog and Internet retailer, for $1.5 billion and $200 million of assumed debt with the intent of developing an Internet retail business. Prior to Federated's acquisition, Fingerhut adopted a revolving credit model, which means that customers were given a line of credit without regard to an assessment of their ability to repay. In [*4] addition, Fingerhut erased a database containing the addresses of customers who had previously defaulted on loans. This reduced Fingerhut's ability to perform fraud screening of its customers. Consequently, Fingerhut had substantial delinquencies in repayment, and had to write-off uncollectible receivables. In 2001, Federated expensed $746 million of Fingerhut receivables as uncollectible, which amounted to 34% of Fingerhut's gross receivable balance.Plaintiffs allege that Defendants caused Fingerhut to reduce its reserves for uncollectible receivables, without disclosing the reduction to investors during the Class Period. The reserve reductions caused Federated to materially overstate its financial success during the Class Period, allegedly in violation of Generally Accepted Accounting Principles ("GAAP"). Defendants also encouraged Fingerhut to loosen its credit-lending policies, by, among other things, offering creditcard customers the opportunity to purchase merchandise without making any payments for six months.The SAC alleges that Defendants knew of or recklessly ignored Fingerhut's problems. In or about March 1999, prior to Federated's acquisition of Fingerhut, representatives [*5] from Federated performed due diligence of Fingerhut's finances, including its lending practices. During this investigation, the representatives met with Fingerhut's finance department, the department responsible for customer receivables. In August or September 1999, Fingerhut and Federated conducted a joint audit of Fingerhut's finances, including its accounting policies.Zimmerman, Tysoe, and Hoguet attended quarterly meetings during the Class Period at Fingerhut's headquarters, at which they discussed Fingerhut's receivables, both companies' reserve policies, and Fingerhut's credit strategies. Defendants also received Flash Reports and Weekly Revolving Charge Monitor Reports, which set out Fingerhut's bad debts and accounts receivables as well as analyzed the receivables' age, size, and delinquency. In particular, the November 24, 1999 Weekly Revolving Charge Monitor reported that 27.2% of Fingerhut's receivables were delinquent or at risk. Defendants Tysoe and Hoguet received either summaries of these reports or the reports themselves.Prior to and during the Class Period, KPMG LLP conducted audits of Fingerhut. After Federated acquired Fingerhut, KPMG conducted quarterly [*6] audits of Fingerhut and held quarterly review meetings at which were discussed Fingerhut's credit policies. Federated's controller, who reported to Defendant Hoguet, attended the meetings. Finally, in April 2000, Figherhut's President of Business told a former Fingerhut employee that he had told Hoguet and Tysoe about Fingerhut's failure to receive payments from many customers. Thereafter, Federated sent KPMG, members of its Internal Audit Department, and what the SAC describes as a "SWAT team" from Fingerhut, to examine the receivables problem.Despite this alleged knowledge, Defendants made a series of positive statements about Federated's financial performance during the Class Period that allegedly violated Section 10(b) of the Securities Exchange Act of 1934, *15 U.S.C. § 78j(b)*, and Rule 10b-5, *17 C.F.R. § 240.10b-5.*

**II. DISCUSSIONA. Pleading Standard**[HN1] A complaint alleging securities fraud must state the circumstances of the fraud with particularity. *Ganino v. Citizens Utils. Co., 228 F.3d 154, 168 (2d Cir. 2000)*. "To state a cause of action under *section 10(b)* and *Rule 10b-5*, a plaintiff must plead that the defendant [*7] made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808 (2d Cir. 1996)*. Scienter, the requisite state of mind under *section 10(b)* and *Rule 10b-5*, is defined as "an intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12, 47 L. Ed. 2d 668, 96 S. Ct. 1375 (1976)*. The Private Securities Litigation Reform Act ("PSLRA") states:

[HN2] In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted

2005 U.S. Dist. LEXIS 4743, *7; Fed. Sec. L. Rep. (CCH) P93,221

with the required state of mind.

*15 U.S.C. § 78u-4(b)(2).* [HN3] To adequately plead scienter under the PSLRA, Plaintiffs must either allege facts demonstrating a motive and opportunity to commit fraud, or facts constituting strong circumstantial evidence of conscious misbehavior [*8] or recklessness. *Ganino, 228 F.3d at 168-69*. Here, Plaintiffs have done neither.**B. The SAC Fails to Allege Scienter1. Motive and Opportunity**Although Plaintiffs contend that they have sufficiently pled motive and opportunity to commit fraud, their arguments are the same ones that the Court rejected on the first motion to dismiss, and are based on the same allegations. Plaintiffs argue that Defendants were motivated to protect and enhance their positions in Federated and to enhance the value of their substantial personal holdings. (SAC P116.) [HN4] "The motive to maintain the appearance of corporate profitability, or the success of an investment, will naturally involve benefit to a corporation, but does not 'entail concrete benefits.'" *Chill v. GE., 101 F.3d 263, 268 (2d Cir. 1996)*; see also *Acito v. IMCERA Group, 47 F.3d 47, 54 (2d Cir. 1995)* ("Plaintiffs' allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit. If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn [*9] in stock price could be forced to defend securities fraud actions."). The SAC does not sufficiently plead scienter by motive and opportunity to commit fraud because the allegations would apply to any corporate defendant.**2. Conscious Misbehavior or Recklessness**Plaintiffs also fail to allege sufficiently that Defendants knew or should have known about Fingerhut's customer receivables problem. The SAC attempts to correct the previous complaint's deficiency by alleging: (1) Defendants Zimmerman, Tysoe, and Hoguet received the Flash Reports and Weekly Revolving Charge Monitor (or summaries of them) and attended quarterly meetings at which the receivables issue was discussed; (2) KPMG performed audits of Fingerhut; and (3) the violations of GAAP, the write-off, the importance of the Fingerhut acquisition to Federated, and due diligence and joint audit investigations (all repeated from the previous complaint). These allegations are again insufficiently particular to establish scienter.The Second Circuit has explained that [HN5] "securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of [*10] facts or access to information contradicting their public statements." *Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000)*. The allegations in the SAC fail to satisfy this standard because they do not state the specific facts to which Defendants had

access that contradicted their public statements. Instead, the SAC is replete with conclusory and vague allegations that do not satisfy the PSLRA.First, the SAC alleges that the Flash Reports and Weekly Revolving Charge Monitor notified Defendants of Fingerhut's customer receivables problem. The SAC generally states that the Flash Reports "displayed growth of active dormant Fingerhut accounts and their portfolio balance for the preceding year, . . . . served as aging reports of Fingerhut's accounts receivable, and showed the sum of the write offs against the sum of collections that had been written off." (SAC P58 (internal quotation marks and alteration omitted).) Similarly, the Weekly Revolving Charge Monitor "also contained statistical and financial information regarding receivables." (Id.) These reports or summaries of them were allegedly provided to Tysoe and Hoguet. Plaintiffs contend these barren [*11] allegations are probative of conscious misbehavior or recklessness. The Court disagrees.Plaintiffs compare the SAC's allegations about the reports to those that the Second Circuit found sufficient in *In re Scholastic Corp. Securities Litigation, 252 F.3d 63 (2d Cir. 2001)*. Plaintiffs argue that in that case, as in this one, the information available to the defendants was raw data and not specific warnings. But the pleading in Scholastic Corp. was much more specific. The defendant corporation, a publishing company, was experiencing a decline in book sales and an increase in returns. See *id. at 70-72*. The scienter allegations in part relied on internal company reports compiled in a "Director's Book," sent each month to members of the board of directors. *Id. at 71*. One of the defendants actually compiled the "Director's Book." Id. The reports analyzed sales data and provided commentary on sales figures. Id. In addition, the company's sales department received book sales reports on a weekly basis that showed sales title by title. Id. The company's warehouse computer system also recorded the number of books returned each [*12] day; this information was then sent to the company's corporate offices each night. Id.The key difference between*Scholastic Corp.* and this case is that the complaint there specifically alleged that the internal company reports showed obvious trends of decreasing sales and increasing returns. Here, the SAC only states that the Flash Reports and Weekly Revolving Charge Monitor contained unspecified information about Fingerhut's customer receivables, that may or may not have alerted Defendants to the problem. Such vague allegations do not contribute to strong circumstantial evidence of conscious misbehavior or recklessness.The SAC approaches more specificity with regard to the November 24, 1999 edition of the Weekly Revolving Charge Monitor, which showed 27.2% of Fingerhut's customer receivables were delinquent or at risk. (SAC P58.) The SAC also alleges that this edition of the monitor demonstrated a rise in delinquencies. (Id. P100.) What the complaint does not allege,

2005 U.S. Dist. LEXIS 4743, *12; Fed. Sec. L. Rep. (CCH) P93,221

however, is that the Weekly Revolving Charge Monitor provided any information that Fingerhut's bad–debt reserve was too low to account for the delinquencies. The allegations [*13] concerning the November 24, 1999 report are not enough, by themselves, to create a strong inference of fraudulent intent especially when Plaintiffs have failed to show motive to commit fraud. See *Kalnit v. Eichler, 264 F.3d 131, 143 (2d Cir. 2001)* (holding that [HN6] where "plaintiff . . . failed to demonstrate that defendants had a motive to defraud . . ., he must produce a stronger inference of recklessness."). Even drawing all reasonable inferences from the information allegedly contained in the November 24, 1999 report, it cannot by itself produce the requisite strong inference of recklessness.Second, the allegations about quarterly meetings at which Fingerhut's bad debt was discussed are also insufficient. The SAC cites a former Fingerhut Vice–President as the source of allegations that Zimmerman, Tysoe, and Hoguet attended quarterly meetings at which occurred "(a) discussions concerning Fingerhut's receivables; (b) discussions concerning Federated's and Fingerhut's reserve policies, as well as Fingerut's credit strategies; and (c) presentations to Federated's senior management by heads of Fingerhut's Business Units and Divisions." (SAC P56.)   That receivables and reserve policies were discussed [*14] in some unspecified manner is not a fact constituting strong circumstantial evidence that Defendants acted recklessly regarding the receivables problem at Fingerhut. These vague allegations of "discussions" do not support an inference that Defendants had access to specific information contradicting their public statements.Third, the SAC states that Federated had KPMG conduct audits of Fingerhut prior to and after the acquisition, and that Federated formed a "SWAT" team to investigate the receivables problem at Fingerhut. Defendants argue that these allegations rebut an inference of scienter because they demonstrate an attempt to analyze the problem at Fingerhut, rather than to cover it up. In support of their argument, Defendants cite *PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 91 Fed. Appx. 418 (6th Cir. 2004)*. The Sixth Circuit in Chandler held that the hiring of an outside consultant to investigate accounting problems did not bolster scienter allegations under the PSLRA. See *id. at 691*. The court first noted that the defendants' hiring of an outside consultant countered the claim that the defendants were trying to keep the problem hidden. *Id. at 692*. [*15]   The court then rejected the allegations because they were conclusory, did not specify what the consultant learned or how it was learned, and provided no basis from which to infer that the defendants knew about the accounting problems prior to the time that the problems were made public. Id.The Court agrees that the SAC's allegations about the KPMG audits suffer from similar defects. The SAC does not state that KPMG un-

covered a problem with the bad–debt reserve or customer receivables, much less that the results of its investigation were made available to Zimmerman, Hoguet, and Tysoe. Accordingly, the "SWAT team" allegations are of no aid to Plaintiffs.Finally, the allegations that are recycled—the alleged violations of GAAP, the size of the write-off, the importance of the Fingerhut acquisition to Federated, and the due diligence and joint audit investigations—remain insufficient to plead scienter for the same reasons explained in Federated I. See *Federated I, 2004 U.S. Dist. LEXIS 3769, 2004 WL 444559, at *5–*8*. Plaintiffs make the same arguments that the Court rejected in its previous decision. It suffices to state here that [HN7] GAAP violations without corresponding fraudulent intent [*16] cannot establish scienter. *2004 U.S. Dist. LEXIS 3769, [WL] at *8* (citing *Novak, 216 F.3d at 309*; *Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999)*; and *Chill, 101 F.3d at 270*). Additionally, the size of the write-off and importance of Federated's investment in Fingerhut do not establish that Defendants knew or should have known about Fingerhut's customer receivables problem. See *Federated I 2004 U.S. Dist. LEXIS 3769, [WL] at *5–*6*. The allegations that due diligence and an audit were conducted prior to Federated's acquisition of Fingerhut does not establish that anything negative was actually discovered such that would alert Defendants here to the customer receivables problem. See *2004 U.S. Dist. LEXIS 3769, [WL] at *6*.Considering the totality of its allegations, the SAC does not adequately plead scienter by alleging facts constituting strong circumstantial evidence that Defendants knew of, or were reckless toward, Fingerhut's customer receivables problems. Indeed, the SAC contains few new facts not pled in the previous complaint. Defendants' motion to dismiss for failure to sufficiently plead scienter is therefore granted.**C. Leave to Amend the Complaint Is Denied**Plaintiffs will not [*17]  be permitted to file a third amended complaint. [HN8] Leave to replead shall be freely granted under *Federal Rule of Civil Procedure 15(a)* unless, among other reasons, the plaintiff has repeatedly failed to cure deficiencies through amendments previously allowed. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)*. The Court will not permit a third bite at the apple. See, e.g., *In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F. Supp. 2d 416, 429 (S.D.N.Y. 2003)*. Instead, the complaint shall be dismissed with prejudice.

**III. CONCLUSION**For the foregoing reasons, the motion to dismiss is **GRANTED.** The case is dismissed with prejudice. The Clerk of the Court is directed to remove this case from the Court's active docket.

**Dated: March 23, 2005**

2005 U.S. Dist. LEXIS 4743, *17; Fed. Sec. L. Rep. (CCH) P93,221

New York, New YorkSO ORDERED.Richard Conway        Casey, U.S.D.J.

LEXSEE 2005 U.S. DIST. LEXIS 9901

**THE LITIGATION TRUST OF MDIP, INC. (formerly known as Mosler, Inc.) AND ITS AFFILIATES AS ASSIGNEE OF CERTAIN CLAIMS PURSUANT TO THE SECOND AMENDED JOINT PLAN OF LIQUIDATION OF MDIP, INC. AND ITS AFFILIATES, Plaintiffs, MICHAEL RAPOPORT, et al., Defendants.**

**Civil Action No. 03-779-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 9901*

**May 25, 2005, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, a chief executive officer (CEO), directors, and shareholder, filed a *Fed. R. Civ. P. 12(b)(1)* motion to dismiss for lack of subject matter jurisdiction in plaintiff litigation trust's damages action for breach of the fiduciary duties of due care, good faith, and loyalty.

**OVERVIEW:** After numerous reckless and misinformed decisions by the CEO, over which the board of directors took no corrective action, the debtor corporation went bankrupt. The debtor's litigation trust filed an action against the debtor's directors, CEO, and shareholder for the breach of fiduciary duties. The court granted the *Fed. R. Civ. P. 12(b)(1)* motion to dismiss for lack of subject matter jurisdiction. The court had no original, diversity jurisdiction under *28 U.S.C.S. § 1332*(a)(1) because a trustee and numerous beneficiaries of the trust, the creditors, were citizens of the same states as the directors. The court declined to apply any "special rule" that the citizenship of the bankrupt, rather than the trustee, was determinative of jurisdiction. The court declined to exercise supplemental jurisdiction under *28 U.S.C.S. § 1367* because the state law fiduciary claims took up 24 of the 26 pages of the complaint, sought damages of $200,000,000, and, thus, substantially predominated over the federal fraudulent transfer claim, seeking $450,000.

**OUTCOME:** The court granted the motion to dismiss. The court denied, as moot, the motion for summary judgment, the motions to strike the summary judgment affidavits and jury demand, and the motions in limine.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter*

*Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] A motion to dismiss under *Fed. R. Civ. P. 12(b)(1)* may present either a facial or factual challenge to subject matter jurisdiction. Where the motion presents a facial challenge to the complaint because the jurisdictional facts are not in dispute, such a motion requires the court to consider the allegations of the amended complaint as true and to make all reasonable inferences in the plaintiff's favor.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
[HN2] See *28 U.S.C.S. § 1332*(a)(1).

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > Business Entities*
[HN3] The diversity statute to requires complete diversity of citizenship. That means the citizenship of every plaintiff must be diverse from the citizenship of every defendant, unless an independent basis for original jurisdiction exists between the non-diverse parties. For an artificial entity, unless that entity is a corporation, its citizenship depends on the citizenship of each of its members. This is a bright-line rule only to be modified by Congress, even where strong policy considerations would favor an exception.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > Business Entities*
[HN4] Where an artificial entity is the named party whose citizenship is in question, the court may not look to the citizenship of unnamed parties. Thus, in the case of a litigation trust, even if application of the real party to the controversy test, would dictate that the citizenship of the trustees should be determinative for the purpose of diversity, the court may not consider their citizenship unless

Case 1:06-cv-00225-MPT    Document 17    Filed 07/12/2006    Page 28 of 41

Page 2
2005 U.S. Dist. LEXIS 9901, *

they are named parties.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview*
[HN5] See *28 U.S.C.S. § 1367.*

**COUNSEL:** [*1] For Litigation Trust of MDIP Inc. and its affiliates, as assignee of certain Claims pursuant to the second amended joint plan of liquidation of MDIP Inc and its affiliates formerly known as Mosler Inc., Plaintiff: Mark Minuti, Michael F. Bonkowski, Saul Ewing LLP, Wilmington, DE.

For Michel Rapoport, William A. Marquard, Thomas R. Wall, IV, Robert A. Young, III, Kelso & Co Inc., Defendants: Eric M. Davis, Paul J. Lockwood, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

    MEMORANDUM

**I. INTRODUCTION**Presently before the court are six motions: a motion to dismiss Counts I and II of the Amended Complaint for lack of subject matter jurisdiction (D.I. 67), a motion for partial summary judgment as to Counts I and II (D.I. 84), a motion to strike the plaintiff's summary judgment affidavits (D.I. 114), a motion to strike the plaintiff's jury demand (D.I. 127), a motion *in limine* requesting the court to exclude evidence and testimony not disclosed in plaintiff's responses to contention interrogatories (D.I. 124), and a motion *in limine* requesting the court to preclude evidence [*2] of events that took place prior to August 6, 1998 (D.I. 125). For the following reasons, the court will grant the motion to dismiss Counts I and II, and deny the remaining motions as moot insofar as they pertain to Counts I or II.

**II. STANDARD OF REVIEW**[HN1] A motion to dismiss under *Federal Rule of Civil Procedure 12(b)(1)* may present either a facial or factual challenge to subject matter jurisdiction. *Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).* The present motion presents a facial challenge to the complaint because the jurisdictional facts are not in dispute. Such a motion requires the court to consider the allegations of the Amended Complaint as true and to make all reasonable inferences in the plaintiff's favor. *See id.*

**III. BACKGROUND**The following facts are alleged in the Amended Complaint, which the court assumes to be true for the purpose of deciding this motion. Mosler, Inc. ("Mosler"), a Delaware corporation, traces its roots back to 1867, when the Mosler–Bahmann Safe Company was founded by Gustav Mosler. (D.I.28 P 17.) From 1967 to 1990, Mosler [*3] went through a series of buyouts that ultimately resulted in 59% of Mosler's stock being held by Kelso & Co., Inc. ("Kelso") and a few of Mosler's senior managers. (Id. PP 21–23.) This permitted Kelso to "install" defendants William Marquard, Thomas Wall, and Robert Young (collectively, "the Kelso Directors") on Mosler's Board of Directors. (Id. P 2.) During its first few years under this ownership structure, Mosler flourished — its sales increased every year from 1992 to 1995. (Id. P 26.)Then, in February 1995, Mosler's Chairman and CEO sent a memo to the Kelso Directors requesting their "concurrence to" the hiring of Michel Rapoport as the next CEO, "which [is] consistent with our succession planning." (Id. P 27.) However, succession planning had not been discussed at either of the two board meetings prior to February 1995, and the memo contained minimal information regarding Rapoport himself. (Id. PP 28–30.) Although no alternative candidates were considered, the inexperienced and unqualified Rapoport was hired as Mosler's CEO. (Id. PP 31–33.) Mosler subsequently entered a period of decline, precipitated by "numerous reckless and misinformed decisions" and mismanagement [*4] by Rapoport and the Kelso Directors. (Id. P 35.)For example, in October 1998, Mosler acquired a security equipment business known as LeFebure. (Id. P 36.) However, during the acquisition process, Rapoport failed to hire outside consultants to assist with due diligence and valuation. Instead, he relied upon numbers provided by LeFebure's parent company, De La Rue, n1 and by Mosler's internal personnel. (Id. P 39.) Furthermore, the Kelso Directors did not inform themselves as to the adequacy of Rapoport's due diligence and valuation. (Id. P 41.) Then, at a special meeting of Mosler's Board in September 1998, the LeFebure acquisition was approved. This occurred in spite of the fact that no tangible information concerning the acquisition was provided to the Kelso Directors; the minutes of the special meeting merely reflect "extensive discussion" about the acquisition. (Id. P 40.) As it turned out, De La Rue overstated LeFebure's financial condition and, as a result, Mosler "grossly overpaid" for LeFebure. (Id. P 42.)

    n1 The precise details of the relationship between LeFebure and De La Rue are not set forth in the complaint, but those details are unimportant here.

[*5] The subsequent integration of LeFebure's business

did not go well either. Without any objection from the Kelso Directors, Rapoport fired many key LeFebure employees who were essential to the integration process. (Id. PP 43–44.) Consequently, "many of the former LeFebure accounts were understaffed and poorly serviced, and Mosler had significant difficulty synchronizing LeFebure's business practices with its own, further minimizing the benefits that Mosler recognized from the LeFebure Acquisition." (Id. P 43.) Rapoport and the Kelso Directors also failed to heed specific warnings, given to them before the acquisition, pertaining to "systems issues that would arise from the need to integrate LeFebure's systems with Mosler's," resulting in a "serious deterioration of Mosler's liquidity." (Id. P 45.)Then in 1999, Mosler attempted to update the software it used to process orders, collect accounts receivable, etc. (Id. P 46.) Rapoport and the Kelso Directors were advised by Mosler's in-house IT employees, among others, that outside specialists would be required for a project of this type. (Id. P 47.) Nevertheless, Rapoport did not hire outside specialists, and without objection from the [*6] Kelso Directors, endeavored to complete the project using only Mosler's in-house IT employees. (Id. P 48.) But because these employees were not qualified to make the updates, the project became "a disaster." Thereafter, Mosler was unable to "timely and accurately invoice customers and collect receivables, accurately track its inventory and timely provide needed parts to its customers, and generate the reliable financials required to access its operating credit facilities." (Id. P 50.) As a result, Mosler's financial condition further deteriorated. (Id. P 51.)During this time, Rapoport and the Kelso Directors also failed to institute standard business controls. For example, they did not "address sustained and systemic flaws in Mosler's inventory management system," resulting in untimely deliveries to customers, and hence, damage to Mosler's goodwill. (Id. P 53.) Mosler's accounts receivable were also rapidly increasing, but neither Rapoport nor the Kelso Directors instituted standard internal control procedures to ensure timely invoicing. (Id. P 54.) Moreover, the problems with the accounts receivable were not discussed at either the February or May 1999 Board meetings. (Id. PP 56–57.) [*7] Mosler's contemporaneous SEC statements further reflect the financial troubles the company was experiencing. Between 1995 and 1999, Mosler reported an increase in uncollected accounts receivable from $46 million to nearly $100 million. (Id. P 55.) Between 1998 and 1999, Mosler saw its net income go from the black to the red, and between 1998 and 2000, its earnings n2 declined while its net sales increased.

> n2 The earnings referred to here are the earnings before interest, taxation, depreciation, and amortization, commonly known as EBITDA.

The deterioration of Mosler did not go unnoticed. On two occasions, in 1999 and 2000, Mosler's outside auditor advised the Board of "reportable conditions" and "material weaknesses" regarding the company's internal controls. However, neither Rapoport nor the Kelso Directors took any corrective action. (Id. PP 65–73.) Furthermore, in addition to experiencing "unreasonably high turnover of certain officers and key employees" (id. P 59), Mosler also suffered from internal unrest. [*8] On at least ten occasions between the end of 1997 and the beginning of 2001, certain Kelso Directors were told by senior Mosler employees that the company had "serious business problems" and that Rapoport was mismanaging the company. (Id. P 60.) Yet, the Kelso Directors failed to investigate these complaints and defended Rapoport after he took retaliatory action against two of the senior employees. (Id. PP 60–61.)By the end of 2000, Mosler began to default on loans and on interest payments due on its bonds. (Id. P 77.) Although Mosler pursued potential buyers, it ultimately filed a voluntary petition under Chapter 11 in the United States Bankruptcy Court for the District of Delaware. (Id. PP 78–79.) Mosler, since renamed MDIP, Inc. ("MDIP"), sold its assets at auction for nearly $28 million, but the proceeds were insufficient to pay all of its creditors. (Id. PP 79–80.) Therefore, pursuant to the approved Chapter 11 plan, the MDIP Litigation Trust, Inc. (the "Trust") was created for the benefit of the unpaid creditors to pursue certain claims. (Id. PP 1, 5.) More specifically, the Trust "is required to prosecute all causes of action assigned to the Trust by Mosler . . . for the [*9] benefit of holders of Allowed Class 3 and Allowed Class 4 Claims." (Id. P 7.) "Moreover, under the Plan, each holder of such a Claim is a Litigation Trust Beneficiary, each of whom has received a beneficial interest in the Litigation Trust Assets in accordance with the Plan." (Id.)Pursuant to this directive, the Trust, in its own name, brought the present action against the Kelso Directors, Rapoport, and Kelso. Count I, based on the allegations outlined above, seeks to recover damages from the Kelso Directors for breach of the fiduciary duties of due care, good faith, and loyalty. (Id. PP 81–84.) Count II, also based on the allegations outlined above, seeks to recover damages from Rapoport under the same theory. (Id. PP 85–88.) Counts III and IV are avoidance and recovery of constructively fraudulent transfer claims against Kelso, under *11 U.S.C. § 548(a)(1)(B)* and *11 U.S.C. § 544(b)*, respectively. (Id. PP 89–101.) However, the parties have since stipulated to the dismissal of Count III, and to a reduction in the damages sought in Count IV from $800,000 to $450,000. (D.I. 99.)

**IV. DISCUSSION**The defendants argue that Counts [*10] I and II, which are state law claims, should be dismissed for lack of subject matter jurisdiction because

(1) there is incomplete diversity, and (2) the exercise of supplemental jurisdiction would be inappropriate. Each of these arguments is addressed below.**A. Diversity of Citizenship**The diversity jurisdiction statute provides, in relevant part:

> [HN2] The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]

*28 U.S.C. § 1332(a)(1)(2004)*. Since *Strawbridge v. Curtiss, 7 U.S. 267, 3 Cranch 267, 2 L. Ed. 435 (1806)*, the Supreme Court has "interpreted [HN3] the diversity statute to require 'complete diversity' of citizenship." *C.T. Carden v. Arkoma Assoc., 494 U.S. 185, 187, 108 L. Ed. 2d 157, 110 S. Ct. 1015 (1990)*. That means the citizenship of every plaintiff must be diverse from the citizenship of every defendant, unless an independent basis for original jurisdiction exists between the non–diverse parties. *See Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 381, 3 L. Ed. 2d 368, 79 S. Ct. 468 (1959)*. For an artificial [*11] entity, unless that entity is a corporation, its citizenship "depends on the citizenship of. . . 'each of its members.'" *Id. at 195–96* (citations omitted). In *C.T. Carden,* the Supreme Court established that this is a bright–line rule only to be modified by Congress, even where strong policy considerations would favor an exception. *See C.T. Carden, 494 U.S. at 196–97.* n3 However, no such statutory modification exists in this case. n4

n3 [HN4] Where an artificial entity is the named party whose citizenship is in question, the court may not look to the citizenship of unnamed parties. *C.T. Carden, 494 U.S. at 187 n.1.* Thus, in the case of a litigation trust, even if application of the "real party to the controversy" test, *see generally Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 64 L. Ed. 2d 425, 100 S. Ct. 1779 (1980)*, would dictate that the citizenship of the trustees should be determinative for the purpose of diversity, the court may not consider their citizenship unless they are named parties, *C.T. Carden, 494 U.S. at 187 n.1.*

n4 The Trust argues that *C.T. Carden* is distinguishable because that case involved a partnership rather than a litigation trust. However, as the defendants point out, the Court's broad language leads to the inescapable conclusion that litigation trusts are subject to its holding as well:

> Thus, the course we take today does not so much disregard the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization, as it honors the more important policy of leaving that to the people's elected representatives. Such accommodation is not only performed more legitimately by Congress than by courts, but it is performed more intelligently by legislation than by interpretation of the statutory word "citizen." The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction. We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision.

> *C.T. Carden, 494 U.S. at 197*. Thus, even if the court were inclined to agree with the Trust's policy arguments as to why the citizenship of the Trust itself should control, the Supreme Court has shut down that line of inquiry and left it up to Congress.

[*12] Consequently, the court must determine the citizenship of the Trust by looking to the citizenship of its "members," i.e., its beneficiaries. n5 *In re A.H. Robins Co., Inc., 197 B.R. 575, 579 (Bankr. E.D. Va. June 30, 1995)*. n6 As such, the citizenship of each creditor–beneficiary must be diverse from the citizenship of each of the Kelso Directors. n7 *Id.* Based on the court's review of the submitted list of creditors, numerous Class 3 and Class 4 creditors are citizens of the same states as the Kelso Directors. (See D.I. 144 Ex. B.) n8 Therefore, as the case is currently captioned, the court does not have diversity jurisdiction over Counts I and II. Moreover, even if the trustees were named plaintiffs and were the "real parties to the controversy," diversity of citizenship would still be lacking

because both trustee Julie Dien Ledoux and defendant Wall are residents of New York. (D.I. 28 P 11; *D.I. 70 Ex. 1.)*

n5 The court's conclusion that it must look to the citizenship of the Trust's beneficiaries may rely on the assumption that the Trust has the capacity to sue in its own name. *See Allegis Group, Inc. Contrs.Health Plan Trust v. Conn. Gen. Life Ins. Co., 2004 U.S. Dist. LEXIS 10630, No. 04-16, 2004 WL 1289862, at *4 n.3 (D. Md. June 10, 2004).* However, since diversity is lacking regardless of whether the citizenship of the beneficiaries or the citizenship of the trustees controls, the court need not address the question of whether there exists a legal basis for making such an assumption, or whether such an assumption is necessary in the first place.

[*13]

n6 The Trust argues that *A.T. Robins,* in which the court looked to the citizenship of the defendant-trust's beneficiaries, is distinguishable because that case involved a products liability claimants trust rather than a litigation trust. (D.I. 145 at 3.) Once again, since diversity is lacking regardless of whether the citizenship of the beneficiaries or the citizenship of the trustees controls, the court need not address the Trust's argument.

n7 The citizenship of Kelso itself is irrelevant because there is an independent basis for original jurisdiction as to Count IV, namely federal question jurisdiction under *28 U.S.C. § 1331 (1993). Romero, 358 U.S. at 381.*

n8 Technically speaking, the court's reliance upon "matters outside the pleadings" converts this motion to dismiss into a motion for summary judgment. *Fed. R. Civ. P. 12(c).* However, if the material facts are not in dispute, then the result is the same regardless of the label attached to the motion. The Trust points out that "there has been no discovery in this action directed specifically to the issue of the citizenship of the beneficiaries," but fails to actually contest the list of creditor–beneficiaries submitted by the defendants. (D.I. 145 at 4.) Since the Trust is presumably in the best position to know the citizenship of its own beneficiaries, and since it does not contest the submitted list, the court has no reason to believe that the material facts are in dispute. Therefore, given the Trust's concession that, based on the list of creditors, "there would not be complete diversity if the citizenship of all beneficiaries were taken into account" (id.), the court is justified in its finding.

[*14] The Trust disagrees with this analysis. Instead, it argues, the Trust's status as a litigation trust arising from a bankruptcy proceeding qualifies it for a "special rule" that "'it is the citizenship of the bankrupt rather than the citizenship of the trustee in bankruptcy that is determinative for diversity jurisdiction.'" *Carlton v. BAWW, Inc., 751 F.2d 781, 787 (5th Cir. 1985)*(quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3606). However, the "special rule" extracted from Wright & Miller is based on a 1906 Supreme Court interpretation of a statute that was repealed in 1978. *See Bush v. Elliott, 202 U.S. 477, 50 L. Ed. 1114, 26 S. Ct. 668 (1906); 11 U.S.C. § 46* (repealed 1978). The court is cognizant of the fact that, in spite of § 46 being repealed nearly twenty seven years ago, the "special rule" appears to have some continued viability in certain jurisdictions. *See, e.g., Carlton, 751 F.2d at 787; Pupo v. Chadwick's of Boston, Inc., 2004 U.S. Dist. LEXIS 22287, No. 03–564, 2004 WL 2480399 (S.D.N.Y. Nov. 4, 2004); Official Plan Comm. of Omniplex Communs. Group, LLC v. Lucent Techs., Inc., 344 F. Supp. 2d 1194* [*15] *(E.D. Mo. July 9, 2004). But see Samson v. Allis–Chalmers Products Liability Trust, 1990 U.S. Dist. LEXIS 7727, No. 90–0139, 1990 WL 87394 (E.D. Pa. June 21, 1990).* Nevertheless, it is clear that "the reasoning underlying this rule rests on a shaky foundation," *Lucent, 344 F. Supp. 2d at 1196,* so the court is reluctant to apply it. Bearing that in mind, the Trust admits it is not in fact a bankruptcy trustee that would have been subject to the now–repealed § 46 in the first place. (D.I. 78 at 11.) In essence, the Trust is asking the court not only to apply a repealed statute, but also to apply the repealed statute *by analogy.* But if applying a repealed statute is dubious (which it is), then applying a repealed statute by analogy is simply beyond the pale. Furthermore, even if § 46 had not been repealed, the fact that the Trust's "*sole* purpose is to liquidate and distribute MDIP's assets for the benefit of unsecured creditors" (D.I. 78 at 11) may not have been a sufficient reason to apply the "special rule" by analogy anyway. *Cf. In re Resorts Int'l, Inc., 372 F.3d 154, 169 (3d Cir. 2004)*("Though the Litigation Trust's assets, the proceeds from the litigation [*16] claims, were once assets of the estate, that alone does not create a close nexus to the bankruptcy plan or proceeding sufficient to confer bankruptcy jurisdiction."). Therefore, the court will decline the Trust's invitation to apply the "special rule" in this case.Thus, diversity jurisdiction is lacking and the court must dismiss Counts I and II unless the exercise of supplemental jurisdiction is appropriate.**B. Supplemental Jurisdiction**The supplemental jurisdiction statute provides, in relevant part:

[HN5] (a) Except as provided in subsections (b) and (c) or as expressly provided other-

wise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution...

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if. . . (2) the claim substantially predominates over the claim or claims over which the district court has original [*17] jurisdiction[.]

*28 U.S.C. § 1367 (1993).*In this case, the court need not determine whether the state law claims "are so related to" the federal law claim "that they form part of the same case or controversy" because it is abundantly clear that the state law claims "substantially predominate[] over" the federal law claim. In the fifteen–page page section of the Amended Complaint captioned "Allegations Relevant To All Claims," nary a word can be found that relates to the allegedly fraudulent transfers from Mosler to Kelso. (See D.I. 28 PP 17–80.) In fact, it is not until the twenty–fourth page of the Amended Complaint's twenty–six pages that these transfers are vaguely described in Counts III and IV. (Id. PP 89–101.) Moreover, after the dismissal of Count III, the damages sought in Count IV was reduced from $800,000 to $450,000 (D.I. 99), whereas the damage sought in Counts I and II is in the neighborhood of $200,000,000 (D.I. 78 at 2). Clearly, both in terms of the facts alleged and the damages sought, the state law claims substantially predominate over the federal law claims. Thus, the exercise of supplemental jurisdiction in this case would [*18] truly permit the tail to wag the dog, and that is something the court will not permit.

**V. CONCLUSION**Because the court does not have original jurisdiction over Counts I and II, and because the court declines to exercise supplemental jurisdiction, subject matter jurisdiction is lacking and the motion to dismiss must be granted.

Dated:    May 25, 2005/s/ Gregory M. SleetUNITED    STATES    DISTRICT JUDGE**ORDER**

IT IS HEREBY ORDERED THAT:

1. The defendants' motion to dismiss (D.I. 67) be GRANTED;

2. Counts I and II of the Amended Complaint (D.I. 28) be DISMISSED;

3. The defendants' motion for summary judgment (D.I. 84) be DENIED as moot;

4. The defendants' motion to strike the plaintiff's summary judgment affidavits (D.I. 114) be DENIED as moot;

5. The defendants' motion to strike the plaintiff's jury demand (D.I. 127) be DENIED as moot;

6. The defendants' motion *in limine* requesting the court to exclude evidence and testimony not disclosed in plaintiff's responses to contention interrogatories (D.I. 124) be DENIED as moot insofar as it pertains to Counts I or II; and

7. The defendants' motion *in limine* requesting [*19] the court to preclude evidence of events that took place prior to August 6, 1998 (D.I. 125) be DENIED as moot.

Dated:    May 25, 2005/s/ Gregory M. SleetUNITED STATES DISTRICT JUDGE

LEXSEE 2005 U.S. DIST. LEXIS 2509

**SHAMROCK HOLDINGS OF CALIFORNIA, INC., SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KRIEGER, GEORGE J. BUCHLER and BRUCE J. STEIN, Plaintiffs, v. AVIE ARENSON, SELK, LLC and LAUREL EQUITY GROUP, LLC, Defendants.**

**Civ. No. 04–1339–SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 2509*

**January 27, 2005, Decided**

**SUBSEQUENT HISTORY:** Related proceeding at, Transferred by *A. Arenson Holdings, LTD. v. Shamrock Holdings of Cal., Inc., 2005 U.S. Dist. LEXIS 30528 (W.D.N.C., Nov. 22, 2005)*
Motion denied by *Shamrock Holdings of Cal., Inc. v. Abraham Arenson, Selk, LLC, 2006 U.S. Dist. LEXIS 9835 (D. Del., Mar. 14, 2006)*

**DISPOSITION:** Court issued order regarding Plaintiffs' motion to remand.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs brought an action in state court against defendants, investors in a failed venture, seeking declaratory relief under Del. Code Ann. tit. 10, § 6501 et seq., after the investors had threatened to sue plaintiffs for breach of fiduciary duty. The investors removed the action and brought motions to dismiss, which were stayed until the court decided plaintiffs' pending motion to remand under 28 U.S.C.S. § 1447(c).

**OVERVIEW:** Plaintiffs claimed that the case was improperly removed under 28 U.S.C.S. § 1441(a) because there was no diversity of citizenship and because the notice of removal was inadequate. Plaintiffs argued that one plaintiff was a Delaware corporation and that two investors were Delaware limited liability companies. Under the company's operating agreement, one plaintiff only had standing to bring a declaratory judgment action in his individual capacity and thus, he was a California resident rather than a Delaware citizen in his representative capacity. The court further found that the citizenship of the two investor limited liability companies depended upon the citizenship of each partner. Two partners were corporations, and the investors failed to provide any detail as to the corporations' business activities to determine the citizenship of these entities. Thus, the investors were required

to supplement the record if they desired to maintain the removed action. Finally, the court found that the notice of removal was adequate under 28 U.S.C.S. § 1332(a) because under the "plaintiff's view rule," the court could consider the monetary amount for which the investors had threatened to sue.

**OUTCOME:** The court allowed the investors to supplement the record regarding diversity jurisdiction and granted plaintiffs' motion for remand if the supplement were not made timely.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Removal > Basis > General Overview*
*Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects*
[HN1] The exercise of removal jurisdiction is governed by 28 U.S.C.S. § 1441(a). The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. A court will remand a removed case if at any time before final judgment it appears that the district court lacks subject matter jurisdiction. 28 U.S.C.S. § 1447(c). The party seeking removal bears the burden to establish federal jurisdiction. In determining whether remand based on improper removal is appropriate, the court must focus on the plaintiff's complaint at the time the petition for removal was filed, and assume all factual allegations therein as true.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Removal > Basis > General Overview*
[HN2] If defendants are citizens of the state in which the action was brought, then an action cannot be removed to

Case 1:06-cv-00225-MPT    Document 17    Filed 07/12/2006    Page 34 of 41

Page 2
2005 U.S. Dist. LEXIS 2509, *

federal court.

***Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview***
***Civil Procedure > Parties > Capacity of Parties > Representatives***
[HN3] It is axiomatic that a person who is a party to litigation is a citizen of the state of his/her domicile. Nevertheless, a person who sues or is sued in a representative capacity is distinct from that person in his individual capacity and can be a citizen of the states in which the individuals he/she represents are citizens.

***Business & Corporate Law > Limited Liability Companies > Management Duties & Liabilities***
***Business & Corporate Law > Limited Liability Companies > Members & Other Constituents***
[HN4] Delaware law prohibits individual liability of members or managers of limited liability companies, to other members or managers, unless such liability is provided for in the operating agreement. Del. Code Ann. tit. 6, § 18–1101(d) (2004).

***Business & Corporate Law > Limited Liability Companies > Formation***
***Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > Business Entities***
***Governments > Courts > Judicial Precedents***
[HN5] The citizenship of artificial entities, such as limited liability companies, has been considered by the United States Supreme Court and numerous appellate courts. The Supreme Court has declined to extend to partnerships its precedent and 28 U.S.C.S. § 1332(c), which provide that a corporation is a citizen of the state in which it was incorporated and the state where it has its principal place of business. The Court concludes that changing federal diversity jurisdiction is a Congressional responsibility and, unless Congress acts to include partnerships in the purview of § 1332(c), the citizenship of partnerships will depend on the citizenship of the partners.

***Business & Corporate Law > Limited Liability Companies > Formation***
***Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview***
[HN6] Without Congressional action redefining the citizenship of a limited liability company, the United States District Court for the District of Delaware declines to conclude that the citizenship of a limited liability company is determined by anything other than the citizenship of its members.

***Business & Corporate Law > Corporations > Formation > Place of Incorporation > General Overview***

***Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview***
[HN7] The United States Court of Appeals for the Third Circuit has stated that a principal place of business is determined by business activities, for example, where the corporation conducts its affairs and not necessarily just where final decisions are made on corporate policy.

***Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > General Overview***
***Civil Procedure > Declaratory Judgment Actions > General Overview***
***Constitutional Law > The Judiciary > Jurisdiction > Diversity***
[HN8] Federal diversity jurisdiction requires that the amount in controversy be at least $75,000. 28 U.S.C.S. § 1332(a). The United States Court of Appeals for the Third Circuit uses the "plaintiff's–view rule" to determine the amount in controversy; thus, the amount in controversy is usually the amount sought by the plaintiff. Generally, this would mean that declaratory judgment actions could not be removed because plaintiffs in such actions do not ask for monetary sums. However, typically the amount in controversy can include the worth of the issue being litigated. The Third Circuit has considered the monetary amount of a threat to sue by defendants when determining the amount in controversy in a declaratory action.

**COUNSEL:** [*1] For Shamrock Holdings of California Inc., Shamrock Capital Advisors Inc., Eugene I. Krieger, George J. Buchler, Bruce J. Stein, Plaintiffs: S. Mark Hurd, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Laurel Equity Group LLC, Avie Arenson, Selk LLC, Defendants: Sean J. Bellew, Cozen & O'Connor, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM ORDER

**I. INTRODUCTION** On September 13, 2004, plaintiffs Shamrock Holdings of California, Inc. ("Shamrock"), Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger, ("Krieger"), George J. Buchler ("Buchler") and Bruce J. Stein ("Stein") commenced this action against defendants, Avie Arenson ("Arenson"), SELK, LLC ("SELK") and Laurel Equity Group, LLC ("Laurel"), in the Chancery Court of Delaware seeking declaratory re-

lief pursuant to *10 Del. C. §§ 6501 et seq.* (2004). (D.I. 16 at 2) On October 6, 2004, defendants removed this action from the Chancery Court to this court. (D.I. 1) After removing this case, defendants filed separate motions to dismiss. (D.I. 3, 4) On October 22, 2004, the parties stipulated that the motions to dismiss [*2] would be stayed until the resolution of plaintiffs' motion to remand, filed on November 5, 2004. (D.I. 6, 15) Pending before the court is plaintiffs' motion to remand.

**II. BACKGROUND**Defendants were investors in ALH Holdings, Inc. n1 ("ALH"), a limited liability company organized in 1998 under the laws of Delaware to engage in home-building. (D.I. 20, Ex. A at 1) Ultimately, ALH was an unsuccessful venture, and investors lost their investments. (Id.) In response to their losses, defendants threatened to sue plaintiffs for breach of fiduciary duty, self-interest and wrongful conduct. (Id. at 3) Defendants asserted that plaintiffs owed them "millions of dollars" in order to make them whole again. (Id.)

> n1 As owner of Arenson Holdings and D.A. Gardens, defendant Arenson invested $1.4 million. Both Arenson Holdings and D.A. Gardens are class B stock holders. (D.I. 20, Ex. A at 4) SELK, LLC, invested approximately $2.9 million and was a Class B member. Id. Laurel invested $2.9 million and was also a class B member. Plaintiff Shamrock invested $9.1 million in ALH. Shamrock holds about 62% of the Class A membership interest and about 38% of ALH. (D.I. 20, Ex. A at 3)

[*3] **A. Citizenship of Parties**Plaintiffs Krieger, Buchler and Stein are all citizens of California. (D.I. 20 at P 14) All three were employees of Shamrock, served on ALH's supervisory board and performed "substantial services for SCA." (Id.)Buchler and Krieger were the supervisory board representatives for the Class A members of ALH. (Id.) The class A members were citizens of Arizona, California, Colorado and Nevada. (Id. at P 15)Stein represented the class D members on the supervisory board. The only class D member was a Delaware limited liability company, Lion ALH Capital LLC. The members of this limited liability company were citizens of Delaware and New York.Plaintiff Shamrock is a corporation organized under the laws of California with its principal place of business in California. (D.I. 20 at P 13) Plaintiff SCA is a Delaware corporation with its principal place of business in California. (Id.)Defendant Arenson is a citizen of Israel and was the Class B representative on ALH's supervisory board. (D.I. 18 at 13) The class B members were A. Arenson Holdings, Ltd., D.A. Gardens, Ltd., J12ALH, Associates LLC and defendants SELK and Laurel. (D.I. 20, Ex. [*4] B at Ex. B) A. Arenson Holdings, Ltd. is a

Israeli corporation with its principal place of business in Israel. (D.I. 24 at 10) (D.A. Gardens, Ltd., is a Panamanian corporation with its principal place of business in Panama. (Id.) J12ALH is a Delaware LLC whose members are Erica Jesselson, a citizen of New York, and Jays Twelve, LLC. (Id.) The members of Jays Twelve, LLC are all New York citizens. (Id.)Defendant SELK is a limited liability company formed under the laws of Delaware. (D.I. 20, Ex. A at 5) Its members are Shalom Lamm, a resident of New York, and NACA Holding, Inc. ("NACA"), a British Virgin Islands corporation with, defendants allege, a principal place of business in Tortola, British Virgin Islands. (D.I. 24 at 11) NACA, however, cannot conduct business with residents of the British Virgin Islands or have any interest in real property in the British Virgin Islands other than a lease for business purposes. (D.I. 28 at Ex. B)Defendant Laurel is a Delaware limited liability company; its members are Mark Frankel, Chesky Frankel and Sallervale Company. (Id.) Mark Frankel is a citizen of New Jersey, Chesky Frankel is a citizen of New York and Sallervale Company [*5] is a Bahamian corporation with, defendants allege, a principal place of business in Nassau, Bahamas. (Id.) The Sallervale Company, however, cannot conduct business with a Bahamian resident, nor own an interest in property greater than a lease for business purposes. (D.I. 28 at Ex. A)**B. Content of the Removal Notice**Paragraphs 2-4 of the removal notice identify the dates at which the defendants were served with plaintiffs' complaint. The notice states that the "matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because plaintiffs allege in paragraph 6 of this declaratory action that defendants 'have demanded millions of dollars.'" (D.I. 20, Ex C at 2) The notice details what it believes to be the citizenship of the plaintiffs. (Id.) It states the citizenship of the members of each of defendant limited liability companies, but not who the members are. n2 For example, the notice states "[SELK] was, and still is a limited liability corporation with its members being citizens of New York and the British Virgin Islands." (Id.) Finally, the notice states that it was made within 30 days after the first defendant received process. (Id. [*6] at 3)

> n2 In the notice, defendants stated the Laurel members were citizens of New Jersey, New York and Belgium, but in their answer to plaintiffs' motion for remand, the defendants state that the members are citizens of New Jersey, New York and the Bahamas. (D.I. 20, Ex. C at 3; D.I. 28, Ex. B)

**III. STANDARD OF REVIEW**[HN1] The exercise of removal jurisdiction is governed by *28 U.S.C. § 1441(a) (2004)*. The statute is strictly construed, requiring remand

Case 1:06-cv-00225-MPT    Document 17    Filed 07/12/2006    Page 36 of 41

Page 4
2005 U.S. Dist. LEXIS 2509, *6

to state court if any doubt exists over whether removal was proper. *Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104, 85 L. Ed. 1214, 61 S. Ct. 868 (1941).* A court will remand a removed case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *28 U.S.C. § 1447(c) (2004).* The party seeking removal bears the burden to establish federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc., 809 F.2d 1006 (3d Cir. 1987);* [*7] *Zoren v. Genesis Engery, L.P., 195 F. Supp. 2d 598, 602 (D. Del. 2002).* In determining whether remand based on improper removal is appropriate, the court "must focus on the plaintiff's complaint at the time the petition for removal was filed," and assume all factual allegations therein as true. Id.

**IV. DISCUSSION** Plaintiffs argue that this case was inappropriately removed from the Court of Chancery because there is no diversity of citizenship and because the Notice of Removal was inadequate. n3 (D.I. 16)

> n3 Plaintiffs argue that defendants SELK and Laurel should not be allowed to remove this case because they are Delaware citizens. [HN2] If defendants are citizens of the state in which the action was brought, then the action cannot be removed to federal court. See 14B Charles Alan Wright et al., Federal Practice and Procedure § 3721 (3d ed. 1998). As stated in Part IV.A.1, however, SELK and Laurel are not Delaware citizens.

**A. Diversity of Citizenship** Plaintiffs argue that [*8] there is no diversity of citizenship because plaintiff SCA is a Delaware corporation, defendants SELK and Laurel are Delaware limited liability companies and defendant Arenson can be considered a Delaware citizen, as he represented Delaware residents on the ALH supervisory board. Plaintiffs also assert that plaintiff Stein is a New York resident because he represented New York residents on the ALH supervisory board, and defendants SELK and Laurel are New York residents because they have members who are New York residents. Defendants argue that the citizenship of a limited liability company is determined by the citizenship of its members, not by the states in which the limited liability companies are formed; therefore, SELK and Laurel are not Delaware citizens. Defendants also assert that plaintiff Stein and defendant Arenson cannot be considered residents of Delaware and New York simply because they represented citizens of those states on the ALH board. Therefore, according to defendants, diversity of citizenship does exist. **1. Citizenship of Stein** Plaintiffs argue that the alleged wrongful actions taken by plaintiff Stein were taken in his representative capacity; thus, he [*9]

should be considered a representative for jurisdictional purposes. Defendants argue that under the ALH Operating Agreement, plaintiff Stein can be independently liable for his actions and the complaint does not indicate he is suing defendants in a representative capacity; therefore, for jurisdictional purposes, only his individual citizenship should be considered.[HN3] It is axiomatic that a person who is a party to litigation is a citizen of the state of his/her domicile. Nevertheless, "a person who sues or is sued in a representative capacity is distinct from that person in his individual capacity" and can be a citizen of the states in which the individuals he/she represents are citizens. *Alexander v. Todman, 361 F.2d 744, 746, 5 V.I. 586 (3d Cir. 1966).*[HN4] Delaware law prohibits individual liability of members or managers of limited liability companies, to other members or managers, unless such liability is provided for in the operating agreement. See *6 Del. C. § 18–1101(d)* (2004). Section 6.2(f) discusses the liability of representative board members and states:

> Neither the Manager nor any Representative or Deputy Representative shall be [*10] liable, responsible, or accountable in damages or otherwise to the Company or any of the Members for any failure to take any action or the taking of any action within the scope of authority conferred on it, him or her by this Agreement made in good faith, except that **the Manager, Representative and Deputy Representatives shall be liable, responsible and accountable for their own fraud, criminal action, bad faith or gross negligence.** Nothing in this Section 6.2(f) shall be deemed to make the Manager or any Representative or Deputy Representative liable, responsible or accountable to any Person other than the Company or the Members.

(D.I. 20, Ex. B at 27)In this case, the Operating Agreement explicitly states that representatives can only be liable for their own actions. Therefore, defendants could only sue Stein in his individual capacity, and Stein would only have standing to bring a declaratory judgment action in his individual capacity. Under this analysis, Stein is a citizen of California for jurisdictional purposes.**2. Citizenship of SELK and Laurel**[HN5] The citizenship of artificial entities, such as limited liability companies, has been considered by the Supreme [*11] Court and numerous appellate courts. In *Carden v. Arkoma Assoc., 494 U.S. 185, 197, 108 L. Ed. 2d 157, 110 S. Ct. 1015 (1990),* the Supreme Court declined to extend to partnerships its precedent and *28 U.S.C. § 1332(c),* which provide that a corporation is a citizen of the state in which it was incorporated and the

Case 1:06-cv-00225-MPT    Document 17    Filed 07/12/2006    Page 37 of 41

Page 5
2005 U.S. Dist. LEXIS 2509, *11

state where it has its principal place of business. The Court concluded that changing federal diversity jurisdiction was a Congressional responsibility and, unless Congress acted to include partnerships in the purview of *§ 1332(c)*, the citizenship of partnerships would depend on the citizenship of the partners. This rationale applies equally to limited liability companies. In *Cosgrove v. Bartolotta, 150 F.3d 729 (7th Cir. 1998)*, the Seventh Circuit concluded that, "given the resemblance between an LLC and a limited partnership, and what seems to have crystallized as a principle that members of associations are citizens for diversity purposes unless Congress provides otherwise . . . the citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members." *Id. at 731* (citing *Carden, 494 U.S. 185* [*12]  and *United Steelworkers of Am. v. R.H. Bouligny, Inc., 382 U.S. 145, 152–53, 15 L. Ed. 2d 217, 86 S. Ct. 272 (1965)*). See also *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC, 374 F.3d 1020, 1022 (11th Cir. 2004)* (finding that a LLC is a citizen of any state of which a member of the company is a citizen); *Belleville Catering Co. v. Champaign Mkt. Place, LLC, 350 F.3d 691, 692 (7th Cir. 2003)* (holding that LLCs are not like corporations for jurisdictional purposes, and the citizenship of a LLC depends on the citizenship of its members); *Ketterson v. Wolf, 2001 U.S. Dist. LEXIS 12535, No. Civ.A. 99–689–JJF, 2001 WL 940909, at *3 (D. Del. Aug. 14, 2001)* (concluding that a LLC is a citizen of the states in which its individual members are citizens). Therefore, [HN6] without Congressional action redefining the citizenship of a limited liability company, this court declines to conclude that the citizenship of a limited liability company is determined by anything other than the citizenship of its members. The citizenship of SELK and Laurel depends, therefore, on the citizenship of their respective corporate members. Their corporate members, Sallervale and NACA Holdings, are considered [*13] citizens of where they were incorporated and where their principal places of businesses are. See *28 U.S.C. § 1332(c) (1) (2004)*. [HN7] The Third Circuit has stated that a principal place of business is determined by business activities, for example, "where the corporation 'conducts its affairs'" and not necessarily just "'where . . . final decisions are made on corporate policy.'" *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., 316 F.3d 408, 411 (3d Cir. 2003)* (quoting *Kelly v. U.S. Steel Corp., 284 F.2d 850, 854 (3d Cir. 1960)*). The evidence of record with respect to Sallervale and NACA Holdings is negligible. On the one hand, the record indicates that, although they are incorporated in the Bahamas and the British Virgin Islands, respectively, neither is permitted to conduct business with local residents or own an interest in local real estate. Defendants aver in a conclusory fashion that the principal places of business for Sallervale and NACA Holdings are the same as their places of incorpora-

tion. Defendants, however, fail to provide any detail as to the corporations' business activities, for example, [*14] what business affairs are conducted and where, and where final decisions are made on corporate policy. It could be that these corporations conduct no business, but without any information in this regard, the court declines to accept defendants' averments carte blanche and find federal jurisdiction on this basis. Therefore, if defendants choose to, they may supplement the record as to these corporate entities. Otherwise, the court does not have a good faith basis upon which to find diversity of citizenship. **B. Adequacy of Defendants' Notice of Removal** [HN8] Federal diversity jurisdiction requires that the amount in controversy be at least $75,000. See *28 U.S.C. § 1332(a) (2004)*. The Third Circuit uses the "plaintiff's–view rule" to determine the amount in controversy; thus, the amount in controversy is usually the amount sought by the plaintiff. *In re LifeUSA Holding, Inc., 242 F.3d 136, 143 (3d Cir. 2001)*; *In re Corestates Trust Fee Litig., 39 F.3d 61, 64 (3d Cir. 1994)*. Generally, this would mean that declaratory judgment actions could not be removed because plaintiffs in such actions do not ask for monetary sums. However, [*15] typically the amount in controversy can include the worth of the issue being litigated. See *Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 339–40, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977)*. Recently the Third Circuit considered the monetary amount of a threat to sue by defendants when determining the amount in controversy in a declaratory action. See *Liberty Mut. Fire Ins. Co. v. Yoder, 112 Fed. Appx. 826, No. 03–3623, 2004 WL 2360987 (3d Cir. October 19, 2004)*. n4 In this case, defendants satisfied the notice requirement by quoting the complaint, which stated that defendants had threatened to sue plaintiffs for "millions of dollars." The court finds this allegation sufficient to pass muster under *28 U.S.C. § 1332(a)*.

> n4 Although this case is not published and, therefore, not precedential, it serves as guidance regarding how the Third Circuit would apply the "plaintiff's–view rule" to a declaratory judgment action.

**V. CONCLUSION** Therefore, at Wilmington this 27th day of January, 2005, having [*16] reviewed plaintiffs' motion to remand and defendants' responses thereto; IT IS ORDERED that, on or before **February 22, 2005,** defendants may supplement the record with respect to Sallervale Company and NACA Holdings, Incorporated. NOTE: FAILURE TO TIMELY SUPPLEMENT WILL RESULT IN PLAINTIFFS' MOTION FOR REMAND (D.I. 15) BEING GRANTED.

01–27–05 Sue L. Robinson United States District Judge

LEXSEE 88 FRD 6

**John R. STRAUB and Suree M. Straub, his wife, Plaintiffs, v. DESA INDUSTRIES, INC.,
Teledyne Wisconsin Motors of Milwaukee, Defendants, and Cann's Lawn & Power
Equipment and/or Robert Cann t/a Cann's Lawn & Power Equipment, Winpower
Manufacturing Company, Third-Party Defendants.**

**Civ. A. No. 79-859**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
PENNSYLVANIA**

*88 F.R.D. 6; 1980 U.S. Dist. LEXIS 16167; 30 Fed. R. Serv. 2d (Callaghan) 1137*

**May 30, 1980**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Third-party defendant generator manufacturer filed a motion to dismiss and/or strike plaintiffs', husband and wife, complaint against it in an action alleging negligence, strict liability, and breach of express and implied warranties.

**OVERVIEW:** The husband suffered an injury during the course of his employment when his arm was struck with a sheave that broke loose from a power generator. Defendant seller sold the generator to the husband's employer. Initially, plaintiffs filed suit against the seller and defendant two corporations that were in the chain of distribution. Subsequently, the seller was dismissed from the lawsuit, but was later joined as a third-party defendant by the two corporations. One of the corporations filed a third-party claim against the generator manufacturer. In addition, both the seller and plaintiffs filed claims against the generator manufacturer. Thereafter, the generator manufacturer filed a motion to dismiss and/or strike plaintiffs claims against it for negligence, strict liability, and breach of express and implied warranties. The court denied in part, finding that plaintiffs' complaint should be allowed as though properly introduced even though plaintiffs failed to seek leave from the court before filing their complaint against the generator manufacturer. The court granted in part, finding that plaintiffs' claim for negligence and strict liability was barred by the statute of limitations.

**OUTCOME:** In an action alleging negligence, strict liability, and breach of express and implied warranties, the court denied the generator manufacturer's motion to strike as to count III, but granted the general manufacturer's motion for dismissal as to counts I and II.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Impleader*
[HN1] Fed. R. Civ. P. 14(a) governs third party practice. Rule 14(a) allows a defending party in a lawsuit to join a person not a party to the action who is or may be liable to the original defendant for all or part of a plaintiff's claim against him. Rule 14 then provides that once a party is named as a third-party defendant, he may assert any defenses or claims he has against the original plaintiff, and that the plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Impleader*
[HN2] Fed. R. Civ. P. 14 sets forth the substance of the claims which can be raised in this manner, but it does not dictate the procedure to be followed. Fed. R. Civ. P. 15(a) requires that a party seek leave of court or written consent of the adverse party before the amendment is filed.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN3] Fed. R. Civ. P. 15(a) reads a party may amend his pleading once as a matter of course at any time before a responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN4] In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is re-submitted for the court's approval. An untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought, and when it does not appear that any of the parties will be prejudiced by allowing the change.

*Governments > Legislation > Statutes of Limitations > Tolling*
*Torts > Procedure > Statutes of Limitations > General Overview*
*Torts > Strict Liability > General Overview*
[HN5] The filing of a third-party complaint by an original defendant does not toll the running of the statute on a cause of action between a plaintiff and a third-party defendant.

*Torts > Procedure > Statutes of Limitations > General Overview*
[HN6] 42 Pa. Cons. Stat. Ann. § 5524 provides that actions to recover damages for injuries to the person caused by the wrongful act, neglect, or negligence of another must be commenced within two years.

*Contracts Law > Types of Contracts > Implied-in-Law Contracts*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN7] 42 Pa. Cons. Stat. Ann. § 5525 provides that actions on a contract, whether express or implied in law, must be commenced within four years.

**COUNSEL:** [**1] Ronald J. Karasek, of Zito, Martino & Karasek, Bangor, Pa., for plaintiffs.Timothy E. Foley of Bour, Gallagher & Foley, Scranton, Pa., for Desa.Cody H. Brooks, Henkelman, Kreder, O'Connell & Brooks, Scranton, Pa., for Cann's.Joseph R. Rydzewski, Scranton, Pa., for Teledyne.Joseph A. O'Brien, Scranton, Pa., Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, Ind., for Winpower.

**OPINIONBY:**

CONABOY

**OPINION:**

[*7] MEMORANDUMThe cause of action involved in this litigation is based on an injury suffered by Plaintiff John R. Straub in the course of his employment with the Delaware River Joint Toll Bridge Commission on July 8, 1977. His arm and wrist were struck with a sheave that broke loose from a power generator. Winpower, Inc. is the manufacturer of the generator; Cann's Lawn & Power Equipment sold it to the Plaintiff's employer. Two other companies are allegedly in the chain of distribution from Winpower to the Bridge Commission--Desa Industries, Inc. and Teledyne Motors of Milwaukee, and have been named as Defendants.On July 6, 1979, Plaintiffs John Straub and Suree Straub, his wife, initiated this lawsuit against Cann's Lawn & Power Equipment, Desa Industries [**2] and Teledyne Motors. Jurisdiction in this Court was based on diversity. Cann's was subsequently dismissed from the original action because of lack of diversity between Cann's and the Plaintiffs, (Memorandum and Order of this Court dated October 15, 1979) but was later joined as a third-party Defendant by both original Defendants.On January 7, 1980, original Defendant Desa brought a third-party complaint [*8] against Winpower. Teledyne also did so on February 14, 1980. On March 12, 1980, third-party Defendant Cann filed a crossclaim against Winpower. Then on March 17, 1980, the Plaintiffs filed a complaint against Winpower. Winpower filed a Motion to Dismiss and/or strike the Plaintiffs' complaint against them. Briefs were filed by both parties, and this matter is now before the Court. The motion to dismiss will be granted in part and denied in part, for the reasons outlined below.[HN1] *Rule 14(a) of the Federal Rules of Civil Procedure* governs third party practice. It allows a defending party in a lawsuit to join a person not a party to the action who is or may be liable to the original Defendant for all or part of the Plaintiff's claim against him. Rule 14 then provides [**3] that once a party is named as a third-party Defendant, they may assert any defenses or claims they have against the original Plaintiff, and that "the plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the Plaintiff's claim against the third-party Plaintiff."The claims filed by the various parties herein do fit within the general framework established by Rule 14. The Plaintiffs, John and Suree Straub, are asserting a claim against Winpower, the third-party Defendant, which arises out of the occurrence which is the subject matter of their claims against Desa and Teledyne.[HN2] Rule 14 sets forth the substance of the claims which can be raised in this manner, but it does not dictate the procedure to be followed. This is the question which is currently raised before this Court, whether the Plaintiffs' claim was properly filed. Defendant Winpower's position is that Plaintiffs' claim must be brought by an amendment to the original complaint under Rule 15(a), which requires that a party seek leave of court or written consent of the adverse party before the amendment is filed. n1

88 F.R.D. 6, *8; 1980 U.S. Dist. LEXIS 16167, **3;
30 Fed. R. Serv. 2d (Callaghan) 1137

Since Plaintiffs did [**4] not comply with Rule 15(a), Winpower contends that their complaint must be stricken.

n1. [HN3] Rule 15(a) reads, in relevant part:(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Plaintiffs contend that their claim against Winpower is an independent action, and not an amendment to their original complaint, and is not subject to Rule 15(a).Rule 14 does not delineate the exact procedure which must be followed by a Plaintiff who seeks to raise his claims against a third-party Defendant. We have found no cases which specifically address this issue and state definitively this is the necessary procedure. However, in the cases cited by both parties, [**5] the procedure usually adopted by the parties is that suggested by Defendants–an amendment to the original complaint. See e.g. *Wasik v. Borg, 423 F.2d 44 (2d Cir. 1970); Frankel v. Back, 37 F.R.D. 545 (E.D.Pa., 1965); Hankinson v. Pennsylvania Railroad Co., 160 F. Supp. 709 (E.D.Pa., 1958); Horan v. Pope & Talbot, Inc., 119 F. Supp. 711 (E.D.Pa.1953).* Plaintiffs in this action did not seek leave of court before filing their complaint against Winpower, so the question before us now becomes whether this omission requires that their complaint be stricken.[HN4] In general, if an amendment that cannot be made as of right is served without obtaining the Court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is re–submitted for the Court's approval. However some courts have held that an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought, and when it does not appear that any of the parties will be prejudiced by allowing the change. Permitting an amendment without formal application to [*9] [**6] the court under these circumstances is in keeping with the overall liberal amendment policies of Rule 15(a) and the general policy of minimizing needless formalities. See 6 Wright & Miller, Federal Practice and Procedure § 1484, p. 241.This policy was adopted by the district court in *Sklar v. Hayes, 1 F.R.D. 594 (E.D.Pa.1941)*:

Rule 14 defines no period within which a plaintiff must amend his pleadings to assert a claim against a third–party defendant.
It would be illogical to conclude, tho, that plaintiffs are free to so amend at any time, without leave of court.
Rule 15 provides no time within which amendments such as the instant one may be made as a matter of course. It is stated therein, however, that leave to amend shall be freely given when justice so requires. Amendments such as here sought to be sustained apparently should be made only upon leave of court.

The plaintiffs did not petition this court for leave to file the instant amended or supplemental pleadings. In proceeding as they did at the time they did, they acted without authority or reason. But it does not appear that any of the parties have been prejudiced by the plaintiffs' action. The [**7] third-party defendant's sole liability had already been made an issue. Therefore, in the interests of expediency as well as justice, since I have decided that leave to amend would have been granted had it been sought, the amended or supplemental pleadings will be allowed to remain. The issues are not altered thereby; the only effect and force of the amendments is to assure the plaintiffs of another possible prerequisite to an award of judgments against the third–party defendant. *Sklar v. Hayes, 1 F.R.D. at 596.*

In the case at issue, Winpower is already a named Defendant, and its liability is at issue. Winpower contends that it is prejudiced in that it did not have an opportunity to object to the filing of Plaintiffs' claim, as it would have if the pleading had been presented for the Court's approval before it was filed. However, in this instance, it is our finding that the amendment would have been permitted under Rule 15, because it would further the goal of Rule 14 to promote judicial efficiency by eliminating circuity of action, and by allowing all claims arising out of one occurrence to be tried in one action. Therefore we find that the complaint should be allowed as [**8] though properly introduced, and the motion to strike will not be granted on these grounds.Winpower also raises the statute of limitations as a bar to Plaintiffs' claims. [HN5] The filing of a third–party complaint by the original Defendant does not toll the running of the statute on a cause of action between the Plaintiff and a third–party Defendant. *Frankel v. Back, 37 F.R.D. at 547; Hankinson v. Pennsylvania Railroad Company, 160 F. Supp. 709 (E.D.Pa.1958).* Plaintiffs concede that Counts I and II of their complaint against Winpower, which sound in negligence and strict liability are barred by the applicable statute. n2 Count III of their complaint is based on the Defendants' alleged breach of express and implied

88 F.R.D. 6, *9; 1980 U.S. Dist. LEXIS 16167, **8;
30 Fed. R. Serv. 2d (Callaghan) 1137

warranties, and is essentially for breach of contract. The limitation on this action under Pennsylvania law is four years. n3 The male Plaintiff's injury took place on July 8, 1977, and the Plaintiffs' complaint was filed on March 17, 1980. Their action for breach of warranty was timely filed, so Count III of the Plaintiffs' complaint is not subject to dismissal.

n2. [HN6] *42 Pa.Cons.Stat.Ann. § 5524* (Purdon) provides that actions to recover damages for injuries to the person caused by the wrongful act, neglect, or negligence of another must be commenced within two years.

[**9]

n3. [HN7] *42 Pa.Cons.Stat.Ann. § 5525* (Purdon) provides that actions on a contract, whether express or implied in law, must be commenced within four years.

Therefore, Defendant Winpower's Motion to Dismiss the Plaintiffs' complaint will be granted as to Counts I and II and denied as to Count III. An appropriate Order will be entered.