IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALAN D. PAUL, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 06-225-MPT |
| DELOITTE & TOUCHE LLP, and DELOITTE & TOUCHE USA LLP | : |
| Defendants. | : |

## MEMORANDUM OPINION

Gary W. Aber, Aber, Goldlust, Esq., Baker & Over, First Federal Plaza, Suite 600, 702 King Street, P.O. Box 1675, Wilmington, Delaware 19899.
Counsel for Plaintiff Alan D. Paul

Sheldon N. Sandler, Esq., Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, Delaware 19899-0391.
Counsel for Defendants Deloitte & Touche, LLP and Deloitte & Touche, USA, LLP.

Wilmington, Delaware
August 20, 2007

Thynge, U.S. Magistrate Judge

## I. Introduction

On April 30, 2002, plaintiff, Alan D. Paul ("Paul"), accepted employment as a partner with defendants, Deloitte & Touche LLP and Deloitte & Touche USA LLP ("Deloitte"), in the firm's Boston, Massachusetts office. On April 22, 2004, Deloitte terminated Paul's employment.[1] On April 6, 2006, Paul initiated suit in this court alleging the following improprieties in relation to his termination:[2] Count I asserts discrimination based on age in violation of 29 U.S.C. § 621, *et seq.*; Count III claims breach of the covenant of good faith and fair dealing; Count IV alleges breach of contract; and Count V alleges a violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, § 4(1).[3] Presently under consideration is Deloitte's motion to dismiss counts III and IV; and its motion to dismiss or, alternatively, for summary judgment of Count V of the amended complaint.[4] Deloitte's second case dispositive motion requires interpretation of the partnership agreements, specifically the provisions requiring that any litigation be tried in Delaware and the application of Delaware law.[5]

## II. Procedural History

Because Paul alleges a violation of the Age Discrimination in Employment Act ("ADEA"), pursuant to 29 U.S.C. § 621, *et seq.*, against Deloitte, federal jurisdiction has

---

[1] D.I. 13 at 3.
[2] On May 25, 2006, Paul amended his complaint to add Count V. *See* D.I. 7.
[3] D.I. 7 at 5-7; D.I. 9 at 5 (dismissing Count II of the complaint voluntarily).
[4] D.I. 5; D.I. 12.
[5] D.I. 9 at 6; *see also* D.I. 13, Ex. A (Memorandum of Agreement of Deloitte & Touche LLP); D.I. 13, Ex. B (Memorandum of Agreement of Deloitte & Touche USA LLP) (collectively the "Employment Agreement").

2

**Thynge, U.S. Magistrate Judge**

**I.     Introduction**

On April 30, 2002, plaintiff, Allan D. Paul ("Paul"), accepted employment as a partner with defendants, Deloitte & Touche LLP and Deloitte & Touche USA LLP ("Deloitte"), in the firm's Boston, Massachusetts office.  On April 22, 2004, Deloitte terminated Paul's employment.[1]  On April 6, 2006, Paul initiated suit in this court alleging the following improprieties in relation to his termination:[2]  Count I asserts discrimination based on age in violation of 29 U.S.C. § 621, *et seq.*; Count III claims breach of the covenant of good faith and fair dealing; Count IV alleges breach of contract; and Count V alleges a violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, § 4(1).[3]  Presently under consideration is Deloitte's motion to dismiss counts III and IV; and its motion to dismiss or, alternatively, for summary judgment of Count V of the amended complaint.[4]  Deloitte's second case dispositive motion requires interpretation of the partnership agreements, specifically the provisions requiring that any litigation be tried in Delaware and the application of Delaware law.[5]

**II.    Procedural History**

Because Paul alleges a violation of the Age Discrimination in Employment Act ("ADEA"), pursuant to 29 U.S.C. § 621, *et seq.*, against Deloitte, federal jurisdiction has

---

[1] D.I. 13 at 3.
[2] On May 25, 2006, Paul amended his complaint to add Count V. *See* D.I. 7.
[3] D.I. 7 at 5-7; D.I. 9 at 5 (dismissing Count II of the complaint voluntarily).
[4] D.I. 5; D.I. 12.
[5] D.I. 9 at 6; *see also* D.I. 13, Ex. A (Memorandum of Agreement of Deloitte & Touche LLP); D.I. 13, Ex. B (Memorandum of Agreement of Deloitte & Touche USA LLP) (collectively the "Employment Agreement").

2

been met for that claim.[6] Paul additionally claims violations of Delaware and Massachusetts state laws. On May 5, 2006, Deloitte filed a motion to dismiss Counts II, III, and IV of Paul's original Complaint asserting that the court should not exercise supplemental jurisdiction over those state law claims.[7] On June 2, 2006, Paul voluntarily dismissed Count II.[8] On May 25, 2006, Paul amended his complaint, adding Count V, a claim of age discrimination under the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, Section 4(1).[9] Deloitte subsequently moved to dismiss or, alternatively, for summary judgment on Count V of the Amended Complaint.[10] Therefore, this decision only addresses Counts III, IV, and V and not the ADEA claim under Count I.

## III.  Legal Standard

Deloitte moves to dismiss Counts III, IV, and V under two different standards.[11] With regard to Count V, Deloitte moves, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.[12] The motions to dismiss, governed by Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6), will be decided under Rule 12, since a Rule 12 motion has a lower threshold for a plaintiff to withstand.[13] Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.[14] The

---

[6] 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").
[7] D.I. 5; Fed. R. Civ. P., Rules 12(b)(1) and 12(b)(6).
[8] D.I. 9 at 5.
[9] D.I. 7.
[10] D.I. 12 ("Pursuant to F.R.C.P. 12(b)(1) and (6) and 56. . . .").
[11] D.I. 5; D.I. 12. See also Fed. R. Civ. P. 12(b)(1) and 12(b)(6).
[12] D.I. 12. The court determines that it is unnecessary to conduct a Rule 56 analysis for Count V.
[13] See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409-10 (3d Cir. 1991) (citing Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir.1989) ("The threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion.")).
[14] Fed. R. Civ. P. 12(b)(6).

3

purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[15] To that end, a Rule 12(b)(6) motion should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[16] The court assumes that all factual allegations in Paul's amended complaint are true and draws all reasonable factual inferences in the light most favorable to plaintiff.[17] However, the court should reject unsupported allegations, "bald assertions," or "legal conclusions."[18]

## IV.   Analysis

### A.   Counts III and IV

Deloitte moves to dismiss Paul's two Delaware state law claims, pursuant to 28 U.S.C. § 1367, maintaining that the court lacks supplemental jurisdiction to decide those claims.[19] Paul counters "that the facts and circumstances that support the ADEA claim . . . are inextricably interwined" with the state law claims and should therefore be heard by the court.[20] Paul argues that if he is able to prove a prima facie case of age discrimination, then Deloitte must show non-discriminatory reasons for his termination.[21] Thus, Paul reasons, if the basis for his termination violated the covenant of good faith and fair dealing or breached his contract, then the evidence supporting the state law

---

[15] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[16] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[17] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).
[18] *Id.* (citations omitted).
[19] 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").
[20] D.I. 9 at 12.
[21] *Id.*

4

claims would be the same evidence used to prove discrimination under the ADEA.[22] Paul also contends that his breach of contract claim will show that Deloitte's conduct was a fraudulent attempt to take his prior client contacts and, as a result, his termination was based upon fraud, deceit or misrepresentation.[23]

Under 28 U.S.C. § 1367, Congress authorized the district courts to exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the claims arising under federal jurisdiction.[24] In *United Mine Workers v. Gibbs*, the Supreme Court established three requirements for supplemental jurisdiction: (1) the "federal claim must have substance sufficient to confer subject matter jurisdiction on the court;" (2) the claims must derive from a "common nucleus of operative fact;" and (3) a plaintiff's claims are such that he would ordinarily expect to try them all in one judicial proceeding.[25] The ADEA claim satisfies the first requirement.[26] While there is ambiguity in the language of *Gibbs* concerning the second and third requirements, "all judicial authority finds that they are cumulative: state claims must satisfy *both* before a district court may exercise supplemental jurisdiction."[27]

Supplemental jurisdiction is extremely fact specific and circuit courts are split in their interpretation of whether different claims have a common nucleus of operative

---

[22] D.I. 9 at 13 ("Thus, the facts that would prove the breach of contract and/or breach of covenant of good faith and fair dealing, would also be evidence of pretext used to provide discrimination under the ADEA.").
[23] D.I. 9 at 17.
[24] See *supra* note 19.
[25] 383 U.S. 715, 725 (1966).
[26] *Derasmo v. Hospitality Franchise Systems, Inc.*, 1995 U.S. Dist. LEXIS 6349, *23 (D.N.J. May 8, 1995) (holding plaintiff's ADEA suit satisfied first standard of the *Gibbs* test).
[27] *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995) (alteration in original) (citations omitted).

fact.[28] Courts in other circuits have held that a "loose" nexus is sufficient to give federal courts supplemental jurisdiction.[29] The Third Circuit, however, has expressly rejected the loose nexus test.[30] Paul predominately relies upon cases outside the Third Circuit, which follow a more expansive interpretation of supplemental jurisdiction. For instance, he cites *Surprise v. GTE Service Corp.*, which held that an ADEA claim and state law claims of breach of contract and breach of the implied covenant of good faith and fair dealing "arise out of an 'interlocking series of transactions'. . . and thus 'substantially derive from the same facts.'"[31] The holding in *Surprise*, however, is not consistent with the precedent of this circuit.

The *Lyon* court rejected the "loose" nexus test and overturned the district court's finding of supplemental jurisdiction.[32] The Third Circuit ruled that jurisdiction is improper over state law claims where the only connection among the federal and state law claims was "the general employer-employee relationship between the parties."[33] The court held that "there is so little overlap between the evidence relevant to the [federal] FLSA and state claims, that . . . it would be charitable to characterize the relationship of the federal and state claims as involving even a 'loose' nexus."[34] *Lyon* suggests that the exercise of supplemental jurisdiction is proper only where "federal and state claims 'are

---

[28] *See Lyon*, 45 F.3d at 760-62 (discussing various courts interpretations of *Gibbs*).
[29] *See Frye v. Pioneer Logging Machinery, Inc.*, 555 F. Supp. 730, 732 (D.S.C. 1983); *Ritter v. Colorado Interstate Gas Co.*, 593 F. Supp. 1279, 1281 (D. Colo. 1984).
[30] *Lyon*, 45 F.3d at 762; *see also Derasmo*, 1995 U.S. Dist. LEXIS 6349, at *25 ("[T]he Third Circuit has expressly rejected this loose nexus test.").
[31] 47 F. Supp. 2d 240, 243 (D. Conn. 1999).
[32] *Lyon*, 45 F.3d at 762.
[33] *Lyon*, 45 F.3d at 762; *see also id.* at 764 ("[W]hen a court exercises federal jurisdiction pursuant to a rather narrow and specialized federal statute it should be circumspect when determining the scope of its supplemental jurisdiction.").
[34] *Lyon*, 45 F.3d at 763 ("Lyon's FLSA claim involved very narrow, well-defined factual issues about hours worked during particular weeks.").

merely alternate theories of recovery based on the same act.'"[35]

Under Third Circuit precedent, the court does not have the power to exercise supplemental jurisdiction over Paul's state law claims for breach of the covenant of good faith and fair dealing or for breach of contract. Interpreting Third Circuit precedent, a case similar to the instant matter contrasted a plaintiff's required proofs for an ADEA claim and his asserted state law claims. In an ADEA claim, a plaintiff

> must prove that he was in a protected class, that he was qualified for the position and that he was discharged because of his age. Each of these facts is irrelevant, or at least immaterial, to plaintiff's state law breach of contract and tort claims.
>
> Conversely, with respect to his state law claims, plaintiff must prove the terms of his employment and termination contract; . . . [and] he must prove that [his employer] failed to deal "fairly" with him; . . . . None of these facts are material to plaintiff's ADEA claim.[36]

Similarly, to prove his ADEA case, Paul must compare his performance with other similarly situated employees that were not terminated due to alleged discrimination.[37] To prove a claim for breach of contract, however, Paul must demonstrate that his termination was a breach of the contractual requirements between Deloitte and himself. Further, by his own admission, Paul's claim of breach of the covenant of good faith "stands in its own right as a separate and distinct claim that is not premised upon age discrimination."[38] Consequently, Paul must explore different

---

[35] *Lyon*, 45 F.3d at 761 (quoting *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979)).

[36] *Derasmo v. Hospitality Franchise Systems, Inc.*, 1995 U.S. Dist. LEXIS 6349, *27-*28 (D.N.J. May 8, 1995).

[37] *See e.g., id.*; D.I. 7 at 4 (Asserting that "there were younger, similarly situated employees with poorer performances, who were not given similar Performance Improvement Plans, nor terminated.").

[38] D.I. 9 at 17 ("[B]reach of the 'Covenant of good faith and fair dealing' is based upon the defendants' use of fraud, deceit, and misrepresentations to engineer the plaintiff's dismissal, in a breach of their contractual obligations.").

discovery and provide different proof and facts than what is necessary to support his state law claims. Thus, Paul's Delaware state law claims, Counts III and IV, do not share a common nucleus of operative fact with his ADEA claim and, as a result, the court cannot exercise supplemental jurisdiction over Counts III and IV. Therefore, those claims must be dismissed.

 B. Count V

It is undisputed that Paul signed the Employment Agreement with Deloitte on May 8, 2002, and that this Employment Agreement is currently valid. The Employment Agreement reads, in pertinent part, that "[t]his *Agreement*. . . shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to its conflict of law rules. . . . [E]ach of the Parties has expressly relied upon 6 Del. C. § 2708."[39] Neither party argues that, pursuant to the Employment Agreement, all disputes concerning that contract should be litigated in Delaware and governed by Delaware law. The point of contention is whether this Employment Agreement is applicable to disputes, such as tort litigation, that are independent of the actual Employment Agreement. Paul asserts that the "Governing Law" section of the Employment Agreement is not broadly written and should only be used to govern contractual disputes between the parties,[40] therefore, tort litigation, such as his Massachusetts age discrimination claim, is not subject to the governing law clause within the Employment Agreement.[41]

---

[39] D.I. 13, Ex. A and B (emphasis added).
[40] D.I. 19 at 7-8.
[41] *Id.*

Paul relies on *Gloucester Holding Corp. v. U.S. Tape and Sticky Prod., LLC*, to illustrate the alleged narrow scope of his Employment Agreement with Deloitte.[42] The court in *Gloucester* distinguished broad choice of law clauses that could encompass tort claims from more narrow clauses that limited its application to disputes that only concerned the agreement. There, a choice of law clause stated that an asset purchase agreement "shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of Delaware . . . ."[43] Broad language, such as *arising out of or relating to* the agreement, was not incorporated into the contract.[44] As a result, the court held that the choice of law clause at issue only applied to claims that involved the asset purchase agreement itself.[45] In *Glouster Holding Corp.*, the choice of law clause was "simply not sufficiently broad enough to cover tort claims such as fraud in the inducement . . . [and] should be governed by Massachusetts law."[46] Conversely, in *Organ v. Byron*, the choice of law clause not only addressed the merger agreement, but also, included the broader language which incorporated "all other aspects of th[e] agreement."[47] The *Organ* court reasoned that "had the parties wished to limit the choice of law clause to the merger . . . they could have done so without inserting the broad provision . . . ."[48]

In the present matter, on its face, the Employment Agreement does not contain the broad choice of law language required in Delaware to encompass potential tort

---

[42] 832 A.2d 116 (Del. Ch. 2003).
[43] *Id.* at 123.
[44] *Id.* at 124.
[45] *Id.* at 124.
[46] *Id.* at 124.
[47] 435 F. Supp. 2d 388, 391 (D. Del. 2006).
[48] *Id.*

9

claims. Instead, that Agreement expressly incorporates 6 Del. C. § 2708, which explicitly provides that "[a]ny person may maintain an action . . . where the action or proceeding *arises out of or relates to* any contract, agreement or other undertaking for which a choice of Delaware law has been made in whole or in part . . . ."[49] Had the parties wished to limit the choice of law clause to only the Employment Agreement, they could have done so without incorporating 6 Del. C. § 2708 and the broad language therein. Rather, by including 6 Del. C. § 2708, the parties agreed to apply Delaware law to settle any disputes pertaining to their Employment Agreement, as well as, any dispute which "arises out of or relates to" their contract.[50] Therefore, the language of the Employment Agreement, through 6 Del. C. § 2708, is sufficiently broad to encompass tort and contract claims.

Although the Governing Law provision states that conflict of law rules should not be given effect, a choice of law clause can be held "'unreasonable' if, *inter alia*, 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision.'"[51] The courts of Delaware will "respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction."[52] Even if the court were to conduct a choice of law analysis, the choice of Delaware law in the Employment Agreement would not be

---

[49] 6 Del. C. § 2708(b) (emphasis added); *see also supra* note 39 and accompanying text for the text of the Employment Agreement.
[50] *Id.*
[51] *Organ*, 435 F. Supp. 2d at 392 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).
[52] *Arby Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1046 (Del. Ch. 2006) (citing *J.S. Alberici Const. Co., Inc. v. Mid-West Conveyor Co., Inc.*, 750 A.2d 518, 520 (Del. 2000)); *see also Organ v. Byron*, 435 F. Supp. 2d 388, 390 (D. Del. 2006) (quoting *Annan v. Wilmington Trust Co.*, 559 A.2d 1289, 1292 (Del. 1989) ("Delaware courts will generally recognize a valid choice of law provision in a contract, as long as "the jurisdiction selected bears some material relationship to the transaction.")).

deemed "unreasonable." In the case at bar, defendants are Limited Liability Partnerships organized under Delaware Law.[53] Deloitte's incorporation in Delaware is a material connection to this jurisdiction and, thus, Delaware has a substantial interest in the contract.[54] Since the parties' Employment Agreement necessitates the application of Delaware law and because its choice of law clause applies to tort claims, Paul's Massachusetts state law claim is precluded from being heard in this court and, therefore, Count V of his amended complaint must be dismissed.

## V.    Conclusion

For the reasons stated above Deloitte & Touche LLP and Deloitte & Touche USA LLP's motion to dismiss Count III and IV (D.I. 5) is granted and their motion to dismiss, or, alternatively, for summary judgment of Count V (D.I. 12) is granted in part and denied in part.

---

[53] D.I. 7 at 2.
[54] See A.I.C. Ltd. v. Mapco Petroleum, Inc., 711 F. Supp. 1230, 1237 (D. Del. 1989), aff'd mem., 888 F.2d 1378 (3d Cir. 1989) (upholding choice of law provision when defendant was incorporated in Delaware); Haft v. Dart Group Corp., 841 F. Supp. 549, 563 (D. Del. 1993) ("[C]onnection is clearly present here because defendants are all incorporated in Delaware.").