# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON

ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN
JOHN E. TRACEY
EDMON L. MORTON

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302-571-6673
DIRECT FAX: 302-576-3330
ssandler@ycst.com

JOSEPH M. BARRY
RYAN M. BARTLEY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
MICHELE SHERRETTA BUDICAK
JEFFREY T. CASTELLANO
DOUGLAS T. COATS (MD ONLY)
KARA HAMMOND COYLE
KRISTEN SALVATORE DEPALMA
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
KERRIANNE MARIE FAY
IAN S. FREDERICKS
JAMES J. GALLAGHER
WILLIAM E. GAMGORT
SEAN T. GREECHER
NATHAN D. GROW
STEPHANIE L. HANSEN
JAMES L. HIGGINS
PATRICK A. JACKSON
DAWN M. JONES
KAREN E. KELLER

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
KAREN L. PASCALE
SETH J. REIDENBERG
PATRICIA A. WIDDOSS

JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
EVANGELOS KOSTOULAS
JOHN C. KUFFEL
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
ADRIA B. MARTINELLI
KATHALEEN MCCORMICK
MICHAEL W. MCDERMOTT
TAMMY L. MERCER
MARIBETH L. MINELLA
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
ROBERT F. POPPITI, JR.
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
RICHARD J. THOMAS
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

January 9, 2008

**VIA ELECTRONIC FILING**

The Honorable Mary Pat Thynge
District Court for the District of Delaware
844 North King Street
Lock Box 8
Wilmington, DE 19801

     Re: Paul v. Deloitte & Touche LLP and Deloitte & Touche USA LLP,
        C.A. No. 06-00225 (MPT)

Dear Judge Thynge:

    This is Defendants Deloitte & Touche LLP and Deloitte & Touche USA LLPs' (together, "Deloitte" or the "Defendants") response to Plaintiff's letter of January 9, 2008 regarding the parties' dispute over the scope of discovery for appropriate "comparators." The Defendants' position is that the scope of appropriate comparators should be limited to the Group 7/Boston office or at most, the Northeast Region. In order for the Court to make an informed decision, the Defendants believe some background and a brief explanation of the Defendants' structure would be instructive.

### THE FORMER ANDERSEN PARTNERS AND THE COMMITTEE OF 6

    As a result of the implosion of Arthur Andersen in 2001, a large number of former Andersen partners joined Deloitte as partners under a Memorandum of Understanding between Andersen and Deloitte. Ordinarily a Deloitte partner can not be severed without a vote of the entire partnership. However, since the due diligence usually performed at Deloitte before making someone a partner was not possible because of the large number of people involved, a special two year period was established, and agreed to by the new Deloitte partners, during

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Mary Pat Thynge
January 9, 2008
Page 2

which a committee known as "the Committee of 6" could approve recommendations to sever former Andersen partners. The Committee of 6 consisted of three former Andersen partners and three other Deloitte partners. *In toto*, less than twenty former Andersen partners were severed through the Committee of 6 process. Paul has already taken discovery about the establishment of the Committee of 6 and the mechanism it followed in considering proposed recommendations for severance. Additional depositions are pending on those subjects.

## DEFENDANTS' STRUCTURE RE: TAX PRACTICE

Plaintiff, a former Andersen partner became a Deloitte partner in 2002 and was severed from the partnership in 2004. When Plaintiff was severed from Deloitte, the tax practice was divided into nine geographic regions. Plaintiff was in the Northeast Region, which included approximately 56 "Lead Tax Service" ("LTS") partners who practiced in a variety of tax specialties. Within each region, the Defendants' tax practice was divided into separate groups, centered around office locations. Plaintiff was a partner in "Group 7," based in Boston, Massachusetts. At the time of Plaintiff's severance, Group 7 consisted of approximately twelve partners, headed by a Lead Partner, Vincent DeGutis. In their answers to Plaintiff's written discovery, Defendants have primarily limited their answers to the Group 7/Boston office, since that is the Group to whom Paul was compared by DeGutis in 2004, when Paul's severance was recommended. In certain instances, Defendants have provided information on revenue for all partners in the Northeast Region when that information was prepared and used internally. Frank Marcos, the head of the Northeast Region and the person to whom Vincent DeGutis reported, had access to information for all Groups in the Region, but DeGutis only had access to information about Group 7.

## APPROPRIATE COMPARATORS
## ARE LIMITED TO GROUP 7/THE BOSTON OFFICE

In order for Plaintiff to establish that he should be permitted to take additional discovery on how he compared to other partners in the Defendants' Northeast Region or elsewhere, he must first be able to demonstrate that those partners are similarly situated to Plaintiff. He is unable to sustain this burden.

First, Plaintiff entered Defendants' partnerships with high expectations and compensation. In fact, Plaintiff was one of the most highly compensated partners in the Group 7/Boston office. Before Plaintiff can reach beyond the partners who comprise the Group 7/Boston office, he must be able to identify other partners who were compensated at the same level and who met the other metrics of similarity to Plaintiff. Plaintiff, who was earning almost one million dollars a year, should not be allowed to compare himself to a partner earning $300,000.

Second, Plaintiff's specialty was servicing the tax needs of real estate, banking, and general corporate (sub-c) entities. Before he should be allowed to take additional discovery on comparators beyond his peer group, he should first be required to explain why he should look outside of his practice area to find appropriate comparators.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Mary Pat Thynge
January 9, 2008
Page 3

Third, the Northeast Region is too large for an easy comparison (with approximately 56 LTS partners), particularly as compared to Plaintiff's immediate cohorts in the Group 7/Boston office. In fact, there is at least one strong comparator candidate located in the Group 7/Boston office. That partner, like Plaintiff, was a former Arthur Andersen tax partner who joined Defendants' practice around the same time as Plaintiff, serviced the same kinds of clients as Plaintiff, and was also compensated at a very high level. Furthermore, Plaintiff's immediate supervisor, Vincent DeGutis, testified at his deposition that he did not compare Plaintiff's performance to anyone other than the LTS partners in the Group 7/Boston office. Therefore, it is appropriate to limit the universe of comparators to the Group 7/Boston office.

Finally, the fact that Plaintiff's severance was made by a Committee with authority to sever other former Andersen partners in locations outside the Group 7/Boston office does not mean that Plaintiff can broaden the universe of appropriate comparators. The test to determine an appropriate comparator is not driven by how or by whom Plaintiff was severed. Instead, this Court has held that Plaintiff must be able to demonstrate that the comparators are similarly situated in "all material aspects." *See Weaver v. United Parcel Service, Inc.*, No. 02-1401 JJF, 2007 U.S. Dist. LEXIS 1314, *12 (D. Del. Jan. 30, 2004) (stating that for an alleged comparator to be considered similarly situated, a plaintiff must present evidence that the individuals with whom he or she wishes to be compared are similarly situated in all material aspects). Plaintiff has not been able to carry this burden; he has merely stated that he needs to "conduct discovery" (including numerous depositions) so that he can identify additional comparators. Plaintiff should not be allowed to selectively choose comparators from a larger universe. *See, e.g., English v. PNC Bank Corp.*, 157 Fed. Appx. 501, 504 (3d Cir. 2005) (finding that plaintiff could not simply choose to compare herself to people who help her case and ignore those who do not); *Burton v. MBNA America Bank, N.A.*, No. 03-915 (GMS), 2005 U.S. Dist. LEXIS 12154, *24 (D. Del. June 22, 2005) (dismissing plaintiff's complaint and stating that the court has a duty to prevent the plaintiff from "cherry picking" the best evidence in an effort to distort the record). Here an individualized decision was made based on Plaintiff's poor performance. Even comparing him with Deloitte partners who were not from Andersen is irrelevant, since those Deloitte partners were not subject to the special severance arrangement, and the Committee of 6 had no authority to sever them from the partnership.

The cases cited by Plaintiff are inapposite. *Finch v. Hercules Incorporated*, 149 F.R.D. 60 (D. Del. 1993) involved a company-wide reduction in force ("RIF"), not an individual decision as here. A committee supervised the Hercules RIF, which was conducted at one time and involved a large number of people. Plaintiff has "cherry-picked" a quotation from *Finch* but ignored the holding of the case. The court said the following:

> Finding that the sort of information requested is relevant . . . does [not] mean such information must be produced for all locations within the United States, especially when the incident occurred at the company's headquarters in Delaware. The information relevant to determining whether discrimination occurred in this case is that information which sheds light on how, within the corporation, this employment decision was made. As defendant points out, "Where . . . the

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Mary Pat Thynge
January 9, 2008
Page 4

employment decisions were made locally, discovery on intent may be limited to the employing unit." Earley v. Champion Intern. Corp., 907 F.2d 1077, 1084 (11th Cir. 1990). See also EEOC v. Packard Elec. Div., General Motors, Corp., 569 F.2d 315, 318 (5th Cir. 1978) [**11] ("In the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which individual complainant complains . . . ."). In those cases, to justify discovery beyond that unit, courts have required a plaintiff to "show a more particularized need and relevance." Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978). The restriction to a particular work unit, however, is most appropriately applied in cases "involving highly individualized claims of discriminatory treatment . . . ." Hardrick, 96 F.R.D. at 619. See also EEOC v. Packard Elec. Div., General Motors, Corp., 569 F.2d at 316 (noting "the relatively narrow factual situations" of plaintiffs' complaints in upholding district court's refusal to allow company-wide discovery).

At 64. *Accord, Kresefsky v. Panasonic Comm. & Systems Co.*, 169 F.R.D. 54, 66 (D.N.J. 1996)("The fact that [the RIF Committee] exercised limited approval or supervisory authority . . . is not critical, either.")(*citing Finch, supra.*). The cases cited by Judge Schwartz involving individual claims are like the present case, rather than the RIF cases from other jurisdictions that Plaintiff relies on. *And see, Siller v. Unisys Corp.*, 1993 U.S. Dist. LEXIS 16273 *13-*14, *17 (E.D. Pa. Nov. 3, 1993)

Plaintiff misstates what Mr. DeGutis said about the email he attached. He said he never saw the email until this case was filed. He did initiate the PIP, along with Frank Marcos, in February 2004. Steve Severin, who was involved with "Partner Matters" did not, but he is going to be deposed in any event. To conclude, Plaintiff has failed to demonstrate that the available universe of comparators (Group 7/Boston office) does not contain adequate comparators who meet the requirement that they be, in all material aspects, substantially similar to Plaintiff. He has already been provided with discovery pertaining to the Committee of 6. Plaintiff should not, therefore, be permitted to take additional discovery on any comparators beyond the discovery Defendants have already provided to Plaintiff.

Respectfully submitted,

Sheldon N. Sandler 245

SNS:mlm
cc:  Gary W. Aber, Esq., via e-file and Hand Delivery
     Maribeth L. Minella, Esq., via i/o mail